## JOE BUG ROQUEMORE v. THE STATE.

### No. 343.  Decided December 15, 1909.

### Rehearing granted June 15, 1910.

**1.—Murder—Continuance—Want of Diligence—Second Application.**

Where, upon trial of murder, defendant's application for continuance showed
a want of diligence; that it was a second application, and that there was no
reason to believe the attendance of the witnesses could be secured, and that
the testimony was probably not true, the same was correctly overruled.

**2.—Same—Evidence—Change of Name.**

Upon trial of murder there was no error in excluding testimony that de-
ceased had changed his name on account of committing a felony in another
State.

**3.—Same—Evidence—Unconnected Incident.**

Upon trial of murder, testimony was inadmissible to show that on the
afternoon prior to the difficulty in which deceased lost his life, the defendant
was consorting with negro prostitutes on a fishing excursion and drinking
whisky while so engaged, and which incident was totally disconnected from
the homicide.

**4.—Same—Evidence—Expert Opinion.**

Upon trial of murder there was no error in admitting testimony of an
expert witness as to his opinion as to how the bullet entered the arm of the
deceased.

**5.—Same—Evidence—Reproduction of Testimony of Dead Witness.**

Upon trial of murder there was no error in permitting the State to re-
produce and read to the jury the testimony of a dead witness, with reference
to the dying declarations of the deceased.

**6.—Same—Evidence—Stenographer's Notes.**

Upon trial of murder there was no error in permitting the stenographer
to read from the record which he had prepared on the former appeal of the
case, which witness swore was a copy of the deceased's written statement; a
proper predicate having been laid.

**7.—Same—Charge of Court—Manslaughter—Malice.**

Under the law there is no malice in manslaughter, and there was no error
in the court's charge that if the jury had a reasonable doubt as to whether
or not the killing was committed with malice, to find the defendant guilty of
manslaughter. Overruling Turner v. State, 54 S. W. Rep., 579.

**8.—Same—Charge of Court—Manslaughter—Prior Difficulty.**

Where, upon trial of murder, there was evidence of a prior difficulty
shortly before the killing which raised the issue of manslaughter and self-de-
fense, it was reversible error in the court's charge to eliminate the testimony
in regard to manslaughter arising out of the first difficulty, unless the jury
should find that defendant was not at fault, without giving any instruction as

to what amount of dereliction on his part would eliminate the theory of manslaughter.

**9.—Same—Charge of Court—Singling out Facts.**

   Where, upon trial of murder, there was evidence of a prior difficulty shortly before the homicide, it was reversible error in the court's charge on manslaughter to single out facts surrounding the first difficulty, and place that issue with undue prominence before the jury.

Appeal from the District Court of Angelina.    Tried below before the Hon. Jas. I. Perkins.

Appeal from a conviction of murder in the second degree; penalty, fifteen years imprisonment in the penitentiary.

The opinion states the case.

*Geo. S. King* and *Beeman Strong,* for appellant.—Cited cases in opinion.

*John A. Mobley,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at fifteen years confinement in the penitentiary.

This is the second appeal of this case.    The former appeal will be found in 54 Texas Cr. Rep., 592.    The facts in this case are, in substance, stated in the former opinion.

1.  Appellant presented an application for continuance.    The bill presenting the matter contains this qualification:    "The witnesses named in this application are two of the same embraced in defendant's application for continuance at former trial in May, 1908. It was then shown that they had never been served with process, but it was claimed that they were only temporarily absent and would be home in a few days.    The former judgment of conviction was reversed in December, 1908, and no process for said witnesses was applied for until in May, 1909, and only a few days before the day set for the trial of this case.    After this conviction and on the hearing of the motion for new trial, some time after the conviction, no further diligence was shown and no effort to show the whereabouts of said witnesses, or that return had been made of the process for Weaver.    In short, all the circumstances show a want of diligence on this trial and convinces me of the correctness of my conclusion reached on the former trial that these witnesses and at least one other named in the former application and omitted in this, were absent by the procurement and consent of the defendant."    In addition to the explanation of the court, it might be added, in the light of this record, we do not think there is any probable reason to believe the attendance of the witnesses could be secured at another trial of this case.    Furthermore, the record throws great doubt upon the probable truth of their testimony.

2.   Bill of exceptions No. 2 shows the State placed the stepfather of deceased on the stand and proved deceased was dead, and appellant, upon cross-examination, among other things, propounded to said witness the following question, to wit: "Why had deceased changed his name' from that of Tom Gauf to that of Tom Reynolds?"   The object of said question, on the part of the defense, was to show deceased was a fugitive from justice from the State of Louisiana, where he had been known as Tom Gauf, and where he was charged with a felony, and that upon coming to Texas had changed his name from Tom Gauf to Tom Reynolds.   This testimony was not admissible for any purpose, and the court did not err in excluding same.   The fact that deceased changed his name on account of committing a felony in another State could not throw any light upon the transaction here being inquired about.

3.   Bill of exceptions No. 3 shows that Sue Goodwin, State's witness, was, over appellant's objection, permitted to testify that she, Hollie Thompson, Florence Davis, Bud and Felix Weaver, and a number of others went fishing on Sunday afternoon prior to the difficulty in which deceased lost his life; and that the defendant was in the crowd, and that someone in the crowd had a bottle of whisky. Appellant objected to the testimony on the ground that it in no way tended to explain or tended to throw any light on the transaction out of which the difficulty between appellant and deceased grew, and was calculated to prejudice the minds of the jury.   The whereabouts of the parties, both appellant and deceased, just prior to the difficulty is germane often in the elucidation of the difficulty itself, but we do not see how this testimony was admissible in the light of this record, but still we do not think it sufficiently important to justify a reversal of the case.

4.   Bill of exceptions No. 4 shows the State was permitted, over appellant's objection, to prove by Dr. Tindal that in his opinion the relative positions of defendant and deceased at the time of the first difficulty in the house was that deceased was slightly to the right of defendant, and that the shot that struck the deceased's arm entered from the front or fore part of the arm, and made an exit to the rear or back.   Appellant objected to this testimony on the ground that same was a conclusion of the witness, and a matter about which he could not testify as an expert.   The court approves the bill by stating that same was allowed with the same qualification as on bill of exceptions No. 3.   The qualification placed on bill No. 3 is as follows: "Allowed as qualified by other facts in connection as shown by statement of facts."   That an expert can swear as to how the bullet entered the arm, there can be no cavil.   This is, in substance, the testimony of the witness here.   It is true, it was not proper for him to say in what relative positions the parties were standing, but still he could testify as an expert as to where the bullet entered.   This demonstrates that if the bullet entered in front, ap-

pellant must have been standing in front of deceased. The witness' testimony, as shown by the statement of facts, shows that he merely testified as to the location of the wounds.

5. Bill of exceptions No. 6 shows the State was permitted, over appellant's objection, to reproduce and read to the jury the testimony of Dr. A. M. Denman, given upon the former trial, that deceased stated to him just prior to his death, and before he made a written statement as to the difficulty, that he was conscious of approaching death, and knew that he was going to die, said testimony being offered for the purpose of laying a predicate for the introduction of the dying declarations of deceased as to the facts of the difficulty. Appellant, at the time said testimony was offered to be reproduced, objected for the reason that said Dr. A. M. Denman was dead, and further, because the party making the legal dying statement was also dead, and the State was allowed and permitted to tack one exception to another exception in order to introduce the legal dying declaration, both parties being dead at the time, and was a substantial denial to the defendant of his constitutional and legal right to be confronted by the witnesses who were to testify against him. This question has been thoroughly settled by this court. The testimony of a dead witness is admissible, and does not violate the constitutional inhibition against confronting defendant with the testimony. Dr. Denman testified to facts laying the predicate for the introduction of the dying declarations. His testimony showing the predicate was equally admissible with the dying declaration itself. This predicate had been laid in the previous trial by Dr. Denman in open court, and thereby the appellant was confronted with said statement. He was also, as stated, confronted with the dying declaration or statement of deceased. All of this testimony was admissible.

6. Bill of exceptions No. 7 objects to the court stenographer reading from the record which he prepared on the former appeal of this cause, which witness swore was a copy of the deceased's written statement as to the transaction in which he was shot. The predicate for the introduction of all this testimony was clearly laid as shown by the record in this court.

7. The 11th ground of the motion for a new trial complains of the following portion of the court's charge: "Or if you so find that such killing was unlawful and not justified as in self-defense, but you have a reasonable doubt as to whether or not same was committed with malice, you will find the defendant guilty of manslaughter," etc. To support appellant's contention he cites us to the cases of Turner v. State, 54 S. W., 579, and Childs v. State, 35 Texas Cr. Rep., 573. The Turner opinion is authority for the statement that there is malice in manslaughter, but this court has overruled said opinion in various decisions; and furthermore, there is no authority for holding that there is legal malice in manslaughter.

This seems to be the criticism of appellant upon the charge. The excerpt taken in connection with the remainder of the charge is correct, and it has been inferentially approved by this court in the previous decision in this case.

We have carefully read the court's charge in the light of all the criticisms urged by appellant, and must say, taken as a whole, there is nothing in same that requires a reversal of this case.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*

### ON REHEARING.

#### June 15, 1910.

DAVIDSON, Presiding Judge.—On a former day of the term the judgment herein was affirmed. Motion for rehearing is asked on two propositions: First, the court was in error in holding the admission of the testimony of Sue Goodwin was not sufficiently erroneous to require a reversal of the judgment, and, second, the court was in error in giving a special instruction at the instance of the State in regard to the question of manslaughter. The original opinion holds that the testimony of Sue Goodwin was inadmissible and erroneous, but not of sufficient importance to require a reversal. We have carefully reviewed this question in the light of argument and authorities cited, and are of opinion the contention of appellant is well taken. Where illegitimate evidence is admitted and brings about an illegal conviction or tends to do so, its admission is hurtful and injurious, or where, conceding the guilt of the accused, the admission of such evidence enhances or tends to enhance the punishment and a higher punishment than the minimum penalty is awarded, the error is of reversible nature. The evidence pertinently raised the issues of manslaughter and self-defense. The evidence of Sue Goodwin tended very strongly to prejudice the minds of the jury against appellant, and was of a hurtful character. The effect of her testimony is that she and Hollie Thompson, and Florence Davis, negro women of more than doubtful reputation for chastity, accompanied by appellant, the two Weavers and others, spent Sunday afternoon on a fishing excursion, and carried with them whisky. We deem it unnecessary to go further into the details of their fishing excursion and what there took place. The difficulty bringing about the prosecution of appellant occurred Monday morning about two o'clock at or near a railroad station, and was not connected with the Sunday evening matters. The fact that appellant was consorting with negro prostitutes Sunday evening on a fishing excursion and drinking whisky while so engaged was in no way connected with the subsequent difficulty between appellant and deceased, and certainly placed appellant in a disadvantageous light before the jury. That evidence did not prove or tend to prove any issue in the case, and its only effect would be to prejudice. The verdict of the jury should be

predicated alone on competent and legal evidence. In support of this conclusion of this court we cite Tyson v. State, 14 Texas Crim. App., 388; Logan v. State, 17 Texas Crim. App., 50; Carter v. State, 23 Texas Crim. App., 508; Dixon v. State, 15 Texas Crim. App., 271; Coker v. State, 35 Texas Crim. Rep., 57; Price v. State, 43 S. W. Rep., 96; Nix v. State, 45 Texas Crim. Rep., 504, 74 S. W. Rep., 764; Watson v. State, 50 Texas Crim. Rep., 171, 16 Texas Ct. Rep., 587; Cole v. State, 48 Texas Crim. Rep., 439, 88 S. W. Rep., 341; Glenn v. State, 76 S. W. Rep., 757; Luttrell v. State, 40 Texas Crim. Rep., 651. This evidence, as stated in the original opinion, was erroneously admitted, and a more careful review of the question convinces us that it was materially so, and its admission was prejudicial. Some reason of the correctness of this statement may be found in the fact that the jury awarded a term of fifteen years in the penitentiary, which was far in advance of the minimum punishment for murder in the second degree.

The second contention brings in review the charge asked by the State and given by the court, which is in the following language:

"If you find there was a previous difficulty in the house between defendant and deceased in which defendant shot deceased in the arm, then whether the circumstances of such previous difficulty may be considered by you as constituting or contributing to adequate cause for the passion, if any, under which defendant acted at the time of the alleged fatal shooting at the train, will depend upon whether defendant or deceased was at fault in such previous difficulty; if defendant shot deceased in such previous difficulty to protect himself from an unlawful attack with a knife, which it reasonably appeared, as viewed from his standpoint, that deceased was about to make upon him, then defendant was not at fault in such previous difficulty, and his passion, if any, engendered by such previous difficulty can be considered by you for such purpose, but if he shot deceased in such previous difficulty while deceased was not advancing on him or doing any other act which of itself or by words accompanying it reasonably justified the defendant in believing he was in danger of such attack by deceased, then in such latter case defendant would be at fault in such previous difficulty and no amount of passion produced in defendant's mind by such wrongful act of his own could constitute adequate cause or be considered as contributing thereto in determining the issue of manslaughter. But the jury will not understand this instruction as having any application to the issue of self-defense or as limiting or in any sense qualifying the instructions on that issue as given in the main charge; that is to say, that notwithstanding the defendant was at fault in the previous difficulty (if you should find he was at fault), yet if he was afterwards unlawfully attacked at the train, his right of self-defense against such attack would not be lessened or limited by the previous occurrences at the room, and instructions on the law of

self-defense given you in the main charge would have full and un-qualified application."

We are of opinion that appellant's contention is correct; that this charge is on the weight of evidence and an undue limitation and restriction upon the issue of manslaughter. It singles out facts surrounding the first difficulty, and gives a special charge upon those stated facts, and places that issue with undue prominence before the jury. This is error. Bryant v. State, 16 Texas Crim. App., 144; Muely v. State, 31 Texas Crim. Rep., 155; Stone v. State, 22 Texas Crim. App., 185; Stockman v. State, 24 Texas Crim. App., 387; Howell v. State, 18 Texas Crim. App., 348; Carter v. State, 39 Texas Crim. Rep., 345. If the question of manslaughter was in the case, arising out of the first difficulty and not in the second, then it was and becomes a question of cooling time. There elapsed about twenty to thirty minutes between the first and the second difficulty. Appellant and some others were sleeping in a side room to a saloon at or near the railroad station. The alleged assaulted party and another came to the house and undertook to get in, and were finally admitted. Appellant's testimony is to the effect that when the assaulted party entered the room he had an open knife in his hand and was advancing upon him when he fired, striking his adversary in the right arm. There was a separation between the parties, the assaulted party threatening to "see him later." The train reached the station some twenty to thirty minutes after the first difficulty. Appellant was entering the train from one side and his adversary from the other when the second difficulty occurred, resulting in the death of deceased. The issues of manslaughter and self-defense were clearly raised under the facts in regard to the first difficulty, and these issues were also suggested by the facts of the second difficulty, as we understand this record. Be that as it may, the issues of manslaughter and self-defense were clearly raised by the facts attending the first trouble. If appellant's mind became enraged beyond cool reflection by the facts of the first difficulty, although he may have been somewhat at fault, still this might not eliminate the question of manslaughter from the case. The question of cooling time was an important issue at this juncture. From the charge as given the jury may have considered the question of manslaughter only with reference to the last assault, and if they should ascertain that he may have been somewhat at fault in the first difficulty, they would give him the benefit only of manslaughter issue from the standpoint of the last difficulty, based upon the provo-cation arising at the time of the second difficulty, and especially would this appear to be so in the absence of a charge in reference to cooling time. The charge as given eliminated the testimony in regard to manslaughter arising out of the first difficulty, unless the jury should find that appellant was not at fault, without giving any instruction as to what amount of dereliction on his part would

eliminate the theory of manslaughter. It has been well said that it is not essential that the overt act or demonstration be sufficient to justify or raise the issue of self-defense, but if in connection with other antecedent facts and circumstances it was sufficient to excite in the mind of a person of ordinary temper sudden passion rendering it incapable of cool reflection, then adequate cause would be produced sufficient to raise the issue of manslaughter, and the law of manslaughter would be the law of the case. Howard v. State, 23 Texas Crim. App., 265, 5 S. W. Rep., 231, and Halsford v. State, 53 Texas Crim. Rep., 42. We deem it unnecessary to pursue this line of thought further as to the effect that this charge may have had not only upon the issue of manslaughter, but in unnecessarily encumbering the charge on self-defense. What has been said with reference to this charge is to call the attention of the trial court to the fact that if it is thought necessary to charge the law of manslaughter with reference to the former difficulty, then such charge must be appropriately given so as to embody the idea of cooling time, avoid the charge on the weight of evidence, and to properly guard in that connection the charge in reference to self-defense.

We are of opinion that the affirmance should be set aside, and the motion for rehearing granted, which is now done, and the judgment is reversed and the cause· is remanded.

*Reversed and remanded.*

McCord, Judge, not sitting.