### Luther Hutcherson v. The State.

#### No. 1046.   Decided March 29, 1911.

**1.—Rape—Change of Venue—Fair and Impartial Trial—Mob Violence.**

Where the application for change of venue was not in the terms of the statute, but was simply addressed to the discretion of the court to change the venue on his own motion, on account of the excitement prevailing in the county of the prosecution and an indication of mob law, but the evidence showed that there was no such feeling in the county as indicated mob violence or that would prevent defendant from having a fair and impartial trial, there was no error in overruling the motion.

**2.—Same—Argument of Counsel—Affidavits.**

Where there were supporting affidavits and controverting affidavits as to the character of the State counsel's argument, and it appeared from the record on appeal that there was no abuse of discretion and that the language claimed to have been used by State's counsel was legitimate and proper under the circumstances and facts of the case, there was no reversible error.

**3.—Same—Evidence—Allegations and Proof—Force Used.**

Upon trial of rape on a female under the age of consent, there was no error in permitting the prosecutrix to detail the circumstances as to how the rape was committed and that force was used, although the indictment did not allege that it was committed with force, threats, etc.

**4.—Same—Evidence—Examination by Physician.**

Upon trial of rape, there was no error in admitting in evidence the physician's testimony as to the physical examination he made of prosecutrix five days after the rape was committed.

**5.—Same—Postponement—Continuance—Fair and Impartial Trial.**

Upon trial of rape, there was no error in overruling defendant's motion to postpone or continue the case on the ground of prejudice against the defendant and that he could not obtain a fair and impartial trial; or on account of not being able to procure the testimony of his codefendant who was held under the same charge and against whom the grand jury had not yet found a bill of indictment; nor on the ground of threatened mob violence against himself and counsel, as the facts showed that there was no such state of facts existing which would deprive the defendant of a fair and impartial trial.

**6.—Same—Charge of Court—Abstract Proposition.**

Where the requested charge was not applicable to the facts it was properly refused.

**7.—Same—Sufficiency of the Evidence.**

Where, upon trial of rape, the evidence showed that the defendant and

Vol. LXII Crim.—1.

his codefendant enticed away the prosecutrix, who was then not fourteen years of age, and that the defendant with the aid of his codefendant by force raped the prosecutrix, and that the punishment meted out to him was far milder than the enormity of the crime warranted, the conviction will not be disturbed.

Appeal from the District Court of Hunt. Tried below before the Hon. R. L. Porter.

Appeal from a conviction of rape; penalty, twenty years imprisonment in the penitentiary.

The opinion states the case.

*Bennett & Janes* and *Sherrill, Mulkey & Hamilton*, for appellant.

*C. E. Lane*, Assistant Attorney-General, for the State.—Upon question of affidavits complaining of the remarks of counsel for the State filed after adjournment: Williams v. State, 56 Texas Crim. Rep., 225.

Upon question of admitting in evidence an examination of prosecutrix by physician: Gonzales v. State, 32 Texas Crim. Rep., 611; Pless v. State, 23 Texas Crim. App., 73.

PRENDERGAST, Judge.—The appellant was indicted and convicted for rape on a girl under the age of fifteen years.

The evidence, without a shadow of doubt, shows that on the evening of August 25, 1910, the appellant, a man of mature years, in connection with a woman, enticed the little girl, not then fourteen years of age, to go with him and this woman in a buggy, she (the little girl) protesting that she did not want to go with them and would not go with them, until by persuasion by both she got into the buggy with them, they assuring her that they would only drive a very short distance to a house that was then in sight, and would return; that after they got her in the buggy they both held her, she trying to get out, and protesting that she did not want to go but wanted to return; that they held her in this way and drove some two miles or more from the city of Greenville to a secluded place. The appellant and this woman, when they reached that place, after hitching the horse, forcibly took the little girl from the buggy and dragged her some distance therefrom into the woods, the appellant, during this time, by threats and persuasion, trying to induce the child to let him have sexual intercourse with her. She protested, halloaed and struggled. They then threw her upon the ground; the man got upon her and she, by fighting and placing her hands, prevented at that time the intercourse. Thereupon he and the woman removed and forcibly held her hands while he accomplished his purpose. The child then got back in the buggy, but they did not return with her. After waiting some time they then took the child, and in the same manner he ravished her a second time. Afterwards they returned with her to the city of Greenville, but did not take her to her aunt's, where she was staying, but had her to get

out some distance before they reached there, and she and this unnatural woman then returned to her aunt's house.

The child's evidence was amply corroborated by other witnesses showing that the appellant and this woman were seen to have this child in the buggy with them that evening and drove out the direction where the child testified the outrage occurred and was seen returning late in the evening from that direction with her. The appellant then told one of the witnesses that he had been out with the girl and this unnatural woman, and, in substance, that he had had intercourse with both of them that evening.

The appellant's attorneys, in their brief and in the record, in effect admit the guilt of the appellant. They contend, however, that the penalty assessed of twenty years confinement in the penitentiary was excessive, and that the case should be reversed in order that he might have a new trial, not to be acquitted, but to see if another jury will not fix a lesser penalty. The contention made by appellant, through his attorneys, is that there was a mob spirit prevailing in the city of Greenville and in Hunt County, which had its effect upon the jury and induced and caused the jury to fix the heavy penalty.

We have examined, and gone over this record time and again with a good deal of care and study, and have failed to find any evidence of the effect of such a spirit, and are entirely satisfied with the verdict. We doubt whether there can be any other case found reported in the books which will show a greater outrage and an offense calling for severer punishment than is shown by this record. In fact, it is remarkable in some respects in that a person who is called a woman could be found that would lend herself to be present and forcibly aid the appellant in ravishing a child under fourteen years of age in satisfying his unnatural lust, in the way this record shows was done. We think that the appellant has been very mildly dealt with by the verdict of the jury in this case.

1. Among other errors assigned is that the court erred in not changing the venue of this case from Hunt County where the offense was committed. The record shows an application addressed to the judge. It is not in the terms of the statute, signed by the appellant and two witnesses, but seems to have been addressed to the discretion of the court requesting the court of his own motion to change the venue. The grounds of this motion are, in substance, that there is considerable excitement in Hunt County after the discovery of the offense, and that there is an indication of mob law and of violence to the appellant. This motion or application for change of venue was contested by the affidavits of the county attorney, the district attorney and the sheriff of the county, which, in effect, show that there is no such feeling in the county as indicates mob violence nor that will prevent appellant from having a fair and impartial trial. It is shown that when the appellant and this woman were first arrested that there was some feeling and excitement, and the sheriff thereupon removed

the appellant from the jail in Hunt County to the jail in Dallas County, but that this excitement subsided, and in a few days he returned with the appellant and replaced him in the jail in Hunt County, where he has continuously been and was at the time of the trial. The offense was committed on August 25, 1910; he was indicted by the grand jury of Hunt County on October 5, 1910, and the trial began on October 10, 1910. There was no error in the court's refusal to change the venue.

2. There are some bills of exception claimed to have been taken to the argument of the county and district attorneys before the jury. These bills were refused by the district judge, and there were then both supporting and controverting affidavits filed attempting to support and to dispute the bills. We deem it unnecessary to take up each of these several bills. We will take the first as a sample and show what the record shows thereabouts. This first bill claims that in the opening address to the jury by Hon. R. F. Spearman, county attorney, he used the following language: "It seems that the defendant, in order to bring about the ruin and destruction of this child, called in the assistance of his paramour, after he had failed in his purpose to do the same thing by himself on a former occasion at the waterworks." This bill is supported by the affidavits of several persons with more or less positiveness. The attorneys for the appellant apparently positively; others that the language used was substantially as they remember it as quoted in the bill.

The county attorney made an affidavit in which he says that he did not use the language quoted in the bill, but used substantially the following language: "The defendant being unable to accomplish the ruin and destruction of this child alone and unaided, called to his assistance his paramour, an unnatural woman, whose conduct can only be explained by attributing to her the same enormity of moral degradation that moved the defendant to the accomplishment of his cruel designs and unnatural purposes." The affidavits of several persons support the affidavit of Mr. Spearman and deny that shown by the bill.

The judge refused this bill because he did not hear the language. In explanation he states that at one time during the argument of the county attorney Mr. Hamilton, of defendant's counsel, came to his desk and stated that he objected to the remark of the county attorney; that he did not remember the words or language he objected to, nor the reasons for the objection; that several times after this during the argument of the county attorney, defendant's counsel said to him privately, "We object to that," not stating to what they objected, nor the grounds of their objections. At no time did they request the court, either verbally or in writing, to charge the jury not to consider any of the county attorney's remarks. That Mr. Spearman, the county attorney, denies emphatically using the language. We believe that the language claimed to have been used by the county attorney was legitimate and proper under the circumstances and facts of this case; that it was

clearly justified by the proof, and that the way the matter was presented to the judge and the manner of the exceptions would not justify this court in reversing the case. We hold that the record does not show any reversible error by the court on this or any other of the claimed bills of exception as to the language of either the county attorney, in opening the case, or the district attorney in closing it. In this connection we further state that the affidavit of the district attorney, especially in the record, shows that the attorneys for the State in argument restrained themselves from making any inflammatory remarks and arguments not justified by the facts, with remarkable restraint.

3. Bill of exception No. 5 complains that while the child who was ravished, Arminta Scott, was on the stand testifying as a witness for the State, and after she had testified that she was only fourteen years of age and that the defendant, Luther Hutcherson, had had sexual intercourse with her at the time charged in the indictment, she was asked by the district attorney to detail the circumstances of the occurrences, to which testimony the defendant objected on the ground that there was no force charged in the indictment; that it charged only statutory rape, and appellant objected to any other evidence showing force because the same was not charged in the indictment. The objections were overruled and the witness was permitted to testify as shown by the bill as follows: "And so they grabbed hold of me, one on each arm, and they drug me over there in the woods, and took me over there in the woods, and I was crying and hollering." All of the facts of what occurred and how they occurred from the time the child was first induced to get into the buggy until and including the ravishment itself, certainly were admissible. It is necessary, in order to understand what was done and said, to prove it, even though the indictment might not have alleged that it was committed with force, threats, etc. There was no error in permitting this testimony.

4. Appellant's sixth and last bill of exception is to the testimony of the doctor who made an examination of the child within five days after the offense was committed. The testimony of the doctor is given in the bill. It is unnecessary for us to recite the whole of it. The testimony, however, showed the facts of the doctor, who was a regular practicing physician, examining the physical parts of the child on the fifth day after the offense was committed, stating what he did, how he did it, and what he found. He shows that he found the hymen was in a circular form with a jagged, ragged opening; that there was a condition of sensitiveness about the mouth of the urethra and the hymen, and there was irritation about the parts, with a little more coloring about the margin of the vagina; that the sensitiveness indicates there had been some irritation of some character before, not long enough to have subsided entirely; that if the hymen had been normal and not penetrated, he thought it would not have had that jagged opening; that the opening might have been penetrated by a male or-

gan, but that in his opinion there would be some pain about it. This testimony of the doctor was objected to by the appellant because it was immaterial and irrelevant, too far from the offense to be a part of it or the res gestae, and, the defendant not being present, it was hearsay and prejudicial. The court approved the bill with the following explanation: "The proof showed this offense to have been committed August 25, 1910, and this examination was made August 31, 1910. In this ruling I was guided by the rule laid down by the Court of Criminal Appeals in the case of Gonzales v. The State, 32 Texas Crim. App., 611; also Pless v. State, 23 Texas Crim. App., 73."

Both of these cases and many others might be cited to show that this testimony was admissible. In the Gonzales case the examination of the doctor occurred two months after the offense was committed; in the Pless case it occurred five weeks thereafter. The testimony of the physician in each of those cases was held admissible. Such testimony of the physician, unless too remote, is always admissible where pertinent, as in this character of case. There was no error of the court in not excluding this testimony.

5. Before the case was tried the appellant made a motion to postpone or continue it on two grounds. The first, in substance, because the feeling and prejudice was so great against the defendant at' that time that he could not get a fair and impartial trial, as fully set up and shown by the motion for change of venue; second, because Mrs. Ruth Campbell, who is charged with being a principal to the same offense herein charged, and who was present when the alleged offense was committed, has not yet been indicted by the grand jury, but is still in jail pending action of the grand jury held on this charge, and that her evidence is material for the defense, and that appellant believes there is not sufficient evidence against her to secure her conviction, but he believes it is the purpose of the grand jury to indict her and the purpose of the district attorney to have her indicted, but that action on her case is withheld until the appellant can be tried in order to prevent her from being first tried and to deprive him of her testimony; that the grand jury now in session had had all the evidence concerning her connection with the offense, and she is neither indicted nor released, and he believes the only purpose in delaying action on her case is to deprive him of her testimony and to force him to be tried first. Third, that defendant's counsel have been warned not to make any motion for postponement or continuance for fear of mob violence. This motion is presented to the court privately before the opening of the court on this October 10, 1910. This motion was sworn to by the appellant. What we have stated about the motion for change of venue also applies here. It is unnecessary to repeat it. The second ground of the motion does not show what the woman, Mrs. Campbell, would testify, and is insufficient for that reason if for no other. The third ground does not show by whom the appellant's counsel were warned,

nor the extent thereof, nor that it prevented appellant's attorneys from doing everything necessary and proper for his defense.

We reiterate that we have examined this record repeatedly and with care, and we are impressed that the facts really repel instead of show that there was any such mob spirit, excitement, or anything else occurring at the time to show that the appellant was in any way deprived of a fair and impartial trial. The extent of the penalty fixed, in our opinion, also largely bears this out. There was no error in overruling the appellant's motion for a continuance or postponement of the case.

6. Appellant complains of the refusal of the court to give the following requested charge: "That the object of punishment, under the law, is to suppress crime and reform the offender, and any punishment having any other object is not authorized by law." This is the whole of the requested charge. But it was requested of the court after the main charge was read to the jury and was refused. This is a correct enunciation of law. It was neither appropriate nor proper to give it to the jury in this case. All this could have been and doubtless was argued to the jury. The court did not err in refusing to give it.

We are entirely satisfied and fully convinced of the guilt of the appellant, and we think that the record, showing such enormity of offense, that the penalty assessed is very mild, and really less—instead of greater—than perhaps ought to have been inflicted.

There being no reversible error, the judgment is in all things affirmed.

*Affirmed.*