### Earl Bocknight v. The State.

#### No. 5826.  Decided May 26, 1920.

1.—Murder—Manslaughter—Continuance—Practice on Appeal—Want of Diligence.

where the circumstances were such that diligence would have demanded the prompt issuance of process for the witness when his whereabouts, after the continuing for his absence, became known to the defendant, there was no reversible error in overruling same. Following Todd v. State, 57 Texas Crim. Rep., 26, and other cases.

2.—Same—Continuance—Motion for New Trial—Rule Stated.

Where the testimony expected from the absent witness was that the defendant had been told by him that the deceased had threatened to run him away from the dance which was merely cumulative. Held, to justify an annullment of the verdict there must be a reasonable probability that with the presence of the absent witness a verdict more favorable to the defendant would have resulted. Following Covey v. State, 23 Texas Crim. App., 388, and other cases; and the motion not being supported by the affidavit of the absent witness, and there being no showing that the trial court abused his discretion, there was no reversible error.

Appeal from the District Court of Brown. Tried below before the Honorable J. O. Woodward.

Appeal from the conviction of manslaughter. Penalty: five years imprisonment in the penitentiary.

The opinion states the case.

*Wilinson & McGaugh,* for appellant.—On question of continuance: Wilson v. State, 175 S. W. Rep., 1067; Phipps v. State, 34 Texas Crim. Rep., 560.

*Alvin M. Owsley,* Assistant Attorney General, for the State.—On question of continuance: Brittain v. State, 40 S. W. Rep., 297; Hamilton v. State, 168 S. W. Rep., 577.

MORROW, Judge.—Under an indictment for murder, appellant was convicted of manslaughter, and punishment assessed at confinement in the penitentiary for a period of five years. A reversal is sought upon the ground that in view of the weakness of the State's case, and the importance of the alleged testimony of an absent witness, the court, having overruled an application for continuance, abused his discretion in refusing to grant a new trial.

The appellant, a negro youth nineteen years of age, shot and killed the deceased, a negro boy about seventeen years of age. The homicide occurred at night, both appellant and deceased and several of the witnesses having previously been at a dance. Appellant's theory, arising from his testimony, was that there had been no previous trouble, but that while at the dance Lilton Davis said to him: ''Jimmie Barnes (deceased) says he is going to make you break out of here tonight. If you don't believe what I said, go and ask Mary Bean; she heard it, and can tell you all about it;'' and further said: ''He has got a knife up his sleeve sure enough.'' Appellant testified that he asked Mary Bean about the matter, and she said: ''Yes, he said it, but I think it was just nigger talk.'' He then borrowed a pistol from the witness Lane, who was at the dance, and started to go home; that before going home he started to go by his brother's house on an errand for his mother, and that he met the deceased, and said: ''Jimmie, what caused you to make the talk you did about me? They say that you are going to make me tear out of the hall.'' Deceased replied: ''You are a God damn liar, you, Mary Bean and Lilton Davis both;'' at the same time starting toward the appellant with a knife. Appellant, while running backward, fired one shot, striking the deceased in front, and inflicting a wound from which he later died. He claimed that the knife in the hands of the deceased was open, and that he had been informed on the previous day that the deceased had said he intended to kill him.

The State's theory, as developed by the statement of the deceased at the examining trial, was in substance that the deceased had walked from the dance with a girl named Nina to her home, and returning met the appellant near the home of the girl; that the appellant stopped deceased, and appeared to be mad; that he had his hand in his pocket. Deceased said: ''He ask me what made me tell Mary Bean that I was going to put him out of the house. I told him I didn't

tell Mary that, and he said: 'Oh yes, you did,' and began to draw his pistol. I got my knife out, but never did get it open. I never had trouble of any kind before with him. Last night as I left the hall with a girl, he told me he wanted to see me. I told him I would be back in a few minutes.''

Mary Bean testified that she had no such conversation as that described with deceased, and that in answer to appellant's inquiry while at the dance whether the deceased had made remarks to her about the appellant, her reply was that he had not done so. She also denied that she had made such statement to Lilton Davis. A pocket-knife was picked up near the deceased, after he fell, and there was a conflict as to its condition, whether the blade was open or not. The homicide took place within a short distance of the dance hall, and after the appellant left the dance hall he met a witness, and inquired for the deceased, and was told that he had gone home with the girl Nina. Appellant proceeded in the direction in which the deceased had gone, and a few minutes later the shot was fired.

The indictment was filed in May, 1919. The trial took place in the latter part of December of the same year. The application for continuance was to secure the testimony of Lilton Davis, whose residence was alleged to be unknown. It was alleged that on a date not stated a subpoena had been issued for the witness to Brown County, and had been returned with the endorsement "Not found in Brown County;" that a subpoena was issued on the request of the State to Cameron County, and which was on December 4 returned marked "Not found after diligent search." The application was described as a "Subsequent application," and it appears from the court's qualification of the bill of exceptions that at the preceding term of the court the case had been continued upon the application of the appellant for the same witness; that after that time the appellant saw the witness in Texas City, Texas, and at that time the witness promised that he would be present at the trial, but no process was issued for him. Under the facts, the action of the trial court in overruling the application cannot be made the subject of just criticism. There was an absence of the diligence which the law requires. The witness had been served with no process. The appellant, after continuing the case for the absence of the witness, failed to embrace the opportunity to serve him with process in Texas City, and relied upon the promise of the witness to make a voluntary appearance. His residence at the time of the trial was unknown, and we fail to discern upon what facts a reasonable expectation of procuring his testimony at a subsequent term could be based. Sinclair v. State, 34 Texas Crim. Rep., 453; Roquemore v. State, 59 Texas Crim. Rep., 568; Vernon's Texas Crim. Statutes, vol. 2, p. 319, note 30. The circumstances were such that diligence would have demanded the prompt issuance of process for the witness when his whereabouts, after the continuance for his absence, became known to the appellant.

Todd v. State, 57 Texas Crim. Rep., 26; Hamilton v. State, 74 Texas Crim. Rep., 219; 168 S. W. Rep., 537; Brittain v. State, 40 S. W. Rep., 297.

The testimony expected from the witness was that the appellant had been told by him that the deceased had threatened to run the appellant away from the dance. To justify annulment of the verdict, there must be a reasonable probability that with the presence of the absent witness a verdict more favorable to the appellant would have resulted. Covey v. State, 23 Texas Crim. App., 388; Pruitt v. State, 30 Texas Crim. App., 156; other cases Branch's Annotated Texas Penal Code, sec. 319. Viewed in the light of the evidence on the trial, the probable truth of the testimony of the absent witness must appear. Cassinova v. State, 12 Texas Crim. App., 554, and other cases, Branch's Annotated Texas Penal Code, sec. 319. Primarily, these matters were for the trial court. Vernon's Texas Crim. Statutes, vol. 2, p. 320, note 34, and cases referred to.

It was by the affidavit of the appellant alone that proof was made that the witness would, if present, give the testimony alleged. If given, the evidence of the absent witness would have been in conflict with the testimony of the deceased and the witness Bean, and corroborated by that of appellant alone. The court remained in session for thirty days after the verdict was rendered, and almost that long before the motion for new trial was overruled. No affidavit of the absent witness or other fact developed after the trial to strengthen the contention of appellant that the witness would give the testimony, or would be present at another trial, or to enhance the probability of the truth of the alleged evidence, or its affecting the verdict on another trial.

It is not within the province of this court to arbitrarily overturn the judgment of the trial judge in overruling a motion for new trial (Bronson v. State, 59 Texas Crim. Rep., 20), and in the instant case no measure or standard or changed condition is pointed out from which we can determine that the trial judge abused his discretion in deciding matters involved in the motion for new trial against the appellant. The burden rests upon the appellant to overcome the presumption favoring the correctness of the decision of the trial court, and this burden in the instant case has not been discharged. From the State's standpoint, the evidence shows an unlawful homicide. It suggests that the appellant had been attentive to the girl whom the deceased accompanied to her home; that the appellant followed the deceased, and sought the meeting with him, and in the encounter was the agressor. The deceased, by his testimony, negatived any previous threats and any assault by him, except in response to the demonstration by the appellant. The appellant's version puts threats into the mouth of the deceased, and makes him the agressor. An issue of fact for solution by the jury arose, and we cannot concur in the

view that, accepting the testimony of the State's witnesses as true, the verdict of the jury is not authorized by the evidence.

We find no error in the record, and order the judgment affirmed.

*Affirmed.*