## JOE SHIELD V. THE STATE.

### No. 13974. Delivered April 8, 1931.

510

The opinion states the case.

*J. C. Darroch, Lee McCartney* and *Conner Scott,* all of Brownwood, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, death.

Appellant and his wife, Opal Mae Shield, had been married for several years. They had two small children, who were living with their mother at the time of the homicide. Sometime prior to the homicide appellant's wife had left him. Later, the parties adjusted their differences and lived together for a while. About four months prior to the homicide they again separated, the children going with their mother. The day before the homicide appellant and Weldon Lucas went in an automobile from the place where appellant was working to Brownwood, a distance of approximately 150 miles. Upon reaching Brownwood appellant bought ten or twelve (soft-nosed) cartridges for his rifle. Taking from the rifle the cartridges that were already in it, he loaded it with the (soft-nosed) cartridges. Leaving Brownwood, he and his companion drove to the town in which his (appellant's) wife and children were living. Just before reaching this town appellant's companion got out of the car and appellant drove on to the home of his wife. Appellant's wife was sitting on the porch holding a little child in her lap. Seeing appellant take his gun from the back of the automobile, she put the child down. As she did this appellant raised the gun and fired. The bullet passed through the body of deceased in the region of the heart. She caught hold of a post and held herself up until appellant fired a second shot. The second shot entered her back, resulting in instant death. After shooting his wife appellant called to her sister to bring him a quilt which he placed over his wife's body. His father-in-law approached from across the street and appellant told him to go back. He failed to obey the command and appellant shot and killed him. The mother-in-law of appellant began to scream, and appellant killed her. He then got in his automobile and drove out of town where he met his traveling companion. Going on to Coleman, appellant surrendered to the sheriff. The state also offered testimony touching threats on the part of appellant to kill his wife.

Appellant did not testify. Insanity was the sole defense. On this issue testimony was offered to show that appellant's father had been insane for some years prior to his death. At one time said father was tried for insanity, but not convicted. Witnesses testified that he had suffered from insane delusions and hallucinations. These witnesses testified that appellant resembled his father. Several witnesses stated that appellant had been in a melancholy frame of mind since his wife had left him. They said they noticed a distinct change in his demeanor. A number of witnesses who had known appellant intimately and seen and talked to him expressed the opinion that he was insane. Answering hypothetical questions, two physicians expressed the opinion that appellant's father had been insane and that appellant was also suffering from insanity.

In rebuttal the state offered several witnesses who testified that, in their opinion, appellant was sane. Also the state offered testimony of physicians touching the sanity of appellant's father, and of appellant.

Based upon hypothetical questions, these witnesses expressed the opinion that appellant was sane, and that his father had not suffered from insanity.

Bill of exception No. 3 is concerned with the action of the court in overruling appellant's first application for a continuance. It is certified in the bill that appellant had used due diligence in having process issued for Dr. Hayes, G. T. Harrison, Paul Twigman, John McCarty, and Jake Atkinson. Subpoenas had been served on Dr. Hayes and G. T. Harrison, but not on the witnesses Twigman, McCarty and Atkinson. According to the qualification appended to the bill of exception, Dr. Hayes was old and feeble, and not able to be present in court, and it was not likely that he would ever be able to attend court. Paul Twigman was a transient person whose residence was not known and there was no probability of his being found. It was averred in the application that Dr. Hayes would testify that appellant's father was insane, and, further, that the witness would testify as to the mental condition of appellant. It was alleged that G. T. Harrison would testify that appellant's father was insane. As to the witness Atkinson, it was alleged in the application, in substance, that said witness would testify that appellant had talked to him about his domestic troubles, and that in his opinion appellant was insane. Looking further to the application it appears that it was alleged that the witness Twigman would testify that appellant "was not normal in many of his acts just previous to the crime." There were averments as to intimate association of the non-expert witnesses with appellant, it appearing therefrom that Twigman, Atkinson and Harrison had worked with appellant, talked to and observed him for several weeks prior to the homicide. We find nothing in the application as to the testimony expected from the witness McCarty.

It was incumbent upon appellant to set out the facts expected to be proved by the witness McCarty in such manner as to show the relevancy and materiality of his testimony. This he failed to do, there being nothing in the application to show what facts appellant expected to prove by the witness. It necessarily follows that, in so far as the application was based on the absence of the witness McCarty, it was defective. Martin v. State, 32 Texas Crim. Rep., 441, 24 S. W., 512; Hutcherson v. State, 62 Texas Crim. Rep., 1, 136 S. W., 53.

The qualification appended to the bill of exception affirmatively shows that there was no reasonable expectation of procuring the testimony at a subsequent term of the witnesses Dr. Hayes and Paul Twigman. Hence there was no abuse of discretion on the part of the trial judge in overruling the application, in so far as it related to the absence of these witnesses. Bocknight v. State, 87 Texas Crim. Rep., 428, 222 S. W., 259; Sinclair v. State, 34 Texas Crim. Rep., 453, 30 S. W., 1070; Roquemore

v. State, 59 Texas Crim. Rep., 568, 129 S. W., 1120; Vernon's Tex. Crim. Statutes, vol. 1, page 455, note 31.

In his amended motion for new trial appellant attached the affidavit of J. C. Edwards wherein it was stated that the witness Atkinson had told him that he knew a great deal about the domestic difficulties between appellant and his wife; that if called upon to testify he would be compelled to testify in favor of appellant; that he knew too much about the facts and was leaving for parts unknown in order to evade process. It was further averred that the witness had left the county of his residence and had not since been seen. The affidavit of the witness Harrison was not attached to the amended motion, and no excuse offered for failing to show by the affidavit of the witness that he would testify to the facts averred in the application for a continuance. As to the witness Atkinson, we fail to discern upon what facts a reasonable expectation of procuring his testimony at a subsequent term could be based. He was purposely evading the process of the court, and no person knew where he might be found. See Bocknight v. State, supra. If the trial judge was in error in overruling the application for a continuance, it does not follow that the motion for a new trial should have been granted, in so far as it was based upon the refusal of the continuance. The general rule is stated by Mr. Branch in his Annotated Texas Penal Code, sec. 319, as follows: "It is not in every case, however, where the absent testimony is material and probably true, that the appellate court will revise the ruling of the trial judge in denying a continuance and a new trial to defendant. It is only in a case where, from the evidence adduced on the trial, the appellate court is impressed with the conviction, not merely that the defendant might possibly have been prejudiced in his rights by such ruling, but that it was reasonably probable that if the absent testimony had been before the jury a verdict more favorable to the defendant would have resulted." See Stolleis v. State, 117 Texas Crim. Rep., 26, 35 S. W. (2d) 158.

Numerous witnesses testified that, in their opinion, appellant was insane. These witnesses had known appellant, observed his conduct and been intimately associated with him. Two physicians, in answer to hypothetical questions propounded to them by appellant's counsel, expressed the opinion that appellant was insane. The state met the issue by introducing witnesses holding a contrary opinion. Giving recognition to the fact that this court has been more liberal in applying the rule of "diligence" to procure testimony upon the issue of insanity than in cases not involving such issue, we find nothing in the decisions that would deprive the trial court of discretion in passing upon a motion for new trial to determine whether, in view of all the evidence heard upon the trial, it was reasonably probable that if the absent testimony had been before the jury a verdict more favorable to the appellant would have resulted. It is the rule that if diligence is shown and the absent testi-

mony appear material and probably true and is of such character as that a different result might be produced thereby on another trial, that a new trial should be granted. Tubb v. State, 109 Texas Crim. Rep., 458, 5 S. W. (2d) 150; White v. State, 90 Texas Crim. Rep., 584, 236 S. W., 745. In the present case the affidavits of the absent witnesses were not attached to the motion for new trial. In the absence of such affidavits, the judicial discretion rested with the trial judge in determining, in passing on the motion for new trial, whether or not the absent testimony was probably true in view of all the evidence heard during the trial. White v. State, supra; Tubb v. State, supra. We are confirmed in our view, after an examination of the testimony heard upon the trial, that the learned trial judge was well within his discretion in refusing a new trial. It does not occur to us that it was at all reasonably probable that the absent testimony, if it had been before the jury, would have brought about a more favorable verdict. See Stolleis v. State, supra.

Bill of exception No. 1 presents the following occurrence: P. F. McCulley testified that he sold appellant 10 or 12 soft nosed cartridges. The state's testimony showed that these cartridges were used by appellant in committing the homicide. Over objection timely interposed by appellant, the state was permitted to prove by the witness that the cartridges he sold appellant were of a peculiar mechanism in that they would explode when striking an object and make a larger hole than an ordinary steel jacket cartridge. Appellant's chief objection was that there was no issue as to the character of wound inflicted, and that the testimony of the witness was irrelevant, immaterial and calculated to inflame the minds of the jury against appellant. It was the theory of the state, given support in the testimony, that appellant made preparation to kill his wife, and that he inflicted the wounds on her with the deliberate purpose of killing her. The motive attributed to appellant arose out of the domestic difficulties between appellant and deceased. It was appellant's theory that he was insane and incapable of acting deliberately and with his malice aforethought. The testimony touching the nature of the cartridges used by appellant in the slaying illustrated appellant's state of mind shortly prior to and at the time of the homicide. It supported the state's theory of preparation, and tended to show malice. This being one of the main issues of the case, the opinion is expressed that the learned trial judge was correct in his ruling. Arcos v. State, 29 S. W. (2d) 395.

Bill of exception No. 4 recites that B. T. James, a witness in behalf of appellant, had testified that he had noticed a change in the disposition of appellant, he having been acquainted with him practically all of his life. The witness was then asked by appellant's counsel to state whether or not he thought appellant was in his normal mind. Upon objection by the state, the witness was not permitted to answer the question. It is recited in the bill that the witness would have answered that he did not

think that appellant was in his normal state of mind. If the question was proper, the testimony given by the witness carried to the jury substantially the same information as would the expression of the opinion appellant sought to elicit. The witness testified, in substance, that he had seen appellant about a month before the homicide and had noticed that he did not talk like he usually did. He said that on one occasion shortly before the homicide he had gone to appellant for the purpose of assessing his taxes and that appellant had advised him that he would not give him his assessment. Touching this incident, the witness said: "I thought he was off some way and I went home. He seemed to be in a depressed condition; he sat with his head down and had nothing to say. He did not have anything to say to me, and usually he was talkative when he would be around me. There appeared to be a difference in his disposition and formerly. I noticed a change in him but I could not tell you what the cause was." If the jury had believed the testimony of the witness, the conclusion would have been inescapable that appellant was not in his normal mind.

We learn from bill of exception No. 5 that Grady Windham, a witness for appellant, had testified that he had known appellant for about fifteen years, and, further, that on an occasion shortly before the homicide he saw appellant "humped down against a building in Trickham with his head down." After having so testified, appellant's counsel asked the witness: "How did he impress you?" On objection by the state, the witness was not permitted to answer. It is recited in the bill of exception that he would have answered, if permitted, that appellant had the air and attitude of a man who was very much cast down and dejected. There seems to have been no controversy over the fact that appellant had been troubled about his domestic relations. Some of the witnesses for the state testified that he seemed worried after his wife left. Many witnesses for appellant testified that he was worried and dejected. If the question was proper, the refusal of the court to permit the witness to answer it could not, in our opinion, have resulted in injury to appellant. A careful analysis of the facts leads us to the conclusion that the testimony sought from the witness would not have materially added to that already before the jury relative to the condition of appellant's mind. See Roebuck v. State, 113 Texas Crim. Rep., 112, 18 S. W. (2d) 643.

Bills of exception Nos. 6 and 7 relate to hypothetical questions propounded by the state to expert witnesses. These witnesses had testified in answer to hypothetical questions propounded by appellant's counsel that in their opinion appellant and his father were insane. The state also propounded hypothetical questions in response to which it was sought to have the same witnesses answer that appellant and his father were sane. Appellant objected to the questions on the ground that they were not supported by the evidence. It might be that the questions did not contain

all of the evidence touching the acts illustrating the mental condition of appellant and his father. We find nothing in the bills of exception other than the ground of objection, which would indicate that the statements embraced in the questions were not supported by the evidence. The mere statement of a ground of objection in a bill of exception is not a certificate on the part of the trial judge that the facts which form the basis of the objection are true; it merely shows that such an objection was made. Buchanan v. State, 107 Texas Crim. Rep., 559, 298 S. W., 569. In view of the fact that the extreme penalty was assessed, we have examined the statement of facts for the purpose of determining whether state's counsel assumed facts not in evidence. Without undertaking to set out the evidence supporting the questions propounded, the opinion of the witnesses seems to have been elicited upon a hypothesis reasonably consistent with the evidence. If the hypothesis was meagerly presented by the district attorney, it was appellant's right to fully present it. In his Annotated Penal Code, sec. 31, Mr. Branch states the rule as follows: "Each side has a right to an opinion from the expert witness upon any hypothesis reasonably consistent with the evidence, and if meagerly presented on one side, it may be fully presented on the other, being within the control of the court, whose duty it is to see that the examination is fairly and reasonably conducted. In putting hypothetical questions, counsel may assume the facts in accordance with his theory of things, and it is not essential that he state all the facts to the witness as they have been proved." In support of the text are cited Lovelady v. State, 14 Texas App., 560; Leache v. State, 22 Texas App., 307, 3 S. W., 539; Shirley v. State, 37 Texas Crim. Rep., 475, 36 S. W., 267, and many other precedents.

It appears from bill of exception No. 9 that the state invoked the rule. State's witness Nat Shields was in the court room during the progress of the trial. Thereafter he was called to the witness stand by the state, and testified that appellant had threatened to kill deceased. He gave no testimony touching the question of appellant's sanity. The bill of exception is qualified as follows: "The witness Nat Shields is very hard of hearing and likely knew very little as to what the testimony had been. The state's attorney did not know that this witness would be a material witness and did not have him sworn but he was sworn and put under the rule after the state's attorney discovered he wanted to use him." A wide discretion is vested in the trial judge in regard to the application and extent of the application of the "rule." The exercise of this discretion will not be revised on appeal except in clear cases of abuse. Section 344, Branch's Annotated Texas Penal Code; Blackwell v. State, 29 Texas App., 194, 15 S. W., 597. In section 344, Branch's Annotated Penal Code of Texas, the rule is further stated as follows: "The admissibility of witnesses who have violated the rule, or who have not been

placed under the rule is a matter addressed to the sound discretion of the court, and, until the contrary appears, it will be presumed on appeal that such discretion was properly exercised."

See Rambo v. State, 69 S. W., 163. It was uncontroverted that appellant killed deceased. Moreover, the fact that he had threatened to kill her was not disputed. The sole defense was insanity. It is not shown in the bill of exception or in the record that the witness heard any other witness testify on the point to which he was called to testify. Where a witness has been in court while other witnesses testified, or by some omission has not been placed under the rule, ordinarily the trial court may permit him to testify where the other witnesses did not testify on the same point to which he is called to testify. Branch's Annotated Penal Code, sec. 344; Cooper v. State, 72 Texas Crim. Rep., 250, 161 S. W., 1096; Cook v. State, 30 Texas Crim. Rep., 607, 18 S. W., 412. We find no abuse of discretion on the part of the trial court in permitting the witness to testify.

In his closing argument, as shown by bill of exception No. 2, the district attorney used language as follows: "I have served as district attorney in this judicial district for the past 24 years, and never, in the history of this judicial district nor in the history of Brown County has there ever been a crime so atrocious as this one."

Appellant timely and properly objected to the argument and requested the court to instruct the jury not to consider it. The objection was overruled. That the crime was atrocious is apparent from the record. If it was improper for the district attorney to express the opinion that it was the most atrocious crime that had ever been committed in his district, it does not follow that the expression of such opinion contributed to appellant's conviction or to the assessment of the death penalty. In determining whether the effect of an improper argument is of such nature as to be obviously hurtful and prejudicial, the facts and surroundings of the particular case must be looked to. We quote from the opinion on motion for rehearing in the case of Silver v. State, 110 Texas Crim. Rep., 512, 8 S. W. (2d) 144, as follows: "Another thing that must be borne in mind is that the facts and surroundings of the particular case should be looked to in determining the effect of an argument complained of. The same language under a certain state of facts might be highly prejudicial, and not so regarded under other circumstances. This is illustrated in Todd v. State, 93 Texas Crim. Rep., 553, 248 S. W., 695; Coates v. State, 98 Texas Crim. Rep., 314, 265 S. W., 891; Vineyard v. State, 96 Texas Crim. Rep., 401, 257 S. W., 548."

Appellant has cited us no case, and we know of none under facts at all similar to those before us in which it has been held that remarks of the nature under consideration called for a reversal. Every man intelligent enough to serve on a jury would know that the facts reflected by

this record stamp the crime as atrocious. In accepting the state's theory the jury were fully warranted in assessing the extreme penalty. We are unable to see how the remarks could have influenced the jury to reject the defense of insanity. Nor are we able to believe that any reasonable man qualified to serve as a juror would permit an opinion of the nature under consideration to cause him to assess the death penalty. To hold otherwise would be to say that juries are not to be credited with the exercise of judgment and discretion. Giving application to the principles controlling, the opinion is expressed that the argument could not have prejudiced appellant's rights.

In defining insanity the court concluded the charge as follows: "On the other hand if you believe from the evidence that the defendant was able to distinguish right from wrong in regard to what he was doing, and knew and understood the nature and quality of the act he was doing, you will find him guilty even though you may believe his mind was not altogether sound or normal."

Appellant timely and properly objected to this charge as being on the weight of the evidence and as being calculated to lead the jury to believe that they might convict him of murder with malice aforethought even though they found him to be insane. We are unable to reach the conclusion that the charge was on the weight of the evidence. It appears to embrace the test for determining whether appellant should be held accountable for the act charged against him. If appellant knew or was able to distinguish the difference between right and wrong as to his act, under the evidence presented in this record, he was guilty of murder, insanity being the sole defense. In Form 930, Willson's Texas Criminal Forms, 4th Edition, in setting forth an instruction on insanity, the following proposition is stated: "Although a man may be laboring under partial insanity, if he still understands the nature and character of his act and its consequences, if he has a knowledge that it is wrong and criminal, and mind sufficient to apply that knowledge to his own case, and to know that if he does the act he will do wrong and receive punishment, such partial insanity is not sufficient to exempt him from responsibility for his criminal acts." This form has been approved in many of the decisions of this court. The statement in the charge under consideration, in our opinion, is substantially the same as that contained in the form to which reference has been made.

We do not believe that the charge was calculated to lead the jury to believe that they should convict appellant of murder with malice aforethought in the event they believed him insane. The court expressly advised the jury that no act done in a state of insanity could be held punishable as an offense. He gave the test for determining whether appellant was sane or insane and followed the approved form laid down in Willson's Texas Criminal Forms, 4th Edition.

In his amended motion for new trial appellant set up newly discovered evidence. It appears that there was no diligence used to secure the testimony claimed to have been newly discovered. It is the rule that in order to warrant a new trial on the ground of newly discovered testimony it is incumbent upon the accused to satisfy the court that the new testimony came to his knowledge since the trial and that it was not known beforehand, and it must be such as reasonable diligence could not have secured at the former trial. Branch's Annotated Texas Penal Code, sec. 192; Fisher v. State, 30 Texas Crim. Rep., 502, 18 S. W., 90. In view of the fact that the death penalty was assessed, we have considered the affidavit attached to the motion. This affidavit is to the effect that the witness worked with appellant for twenty-four days before the homicide; that he slept with appellant during such time; that appellant would not go to sleep until after three o'clock in the morning, and would get up about daylight; that he talked principally about his wife; that in the opinion of the witness appellant was insane. We think it is clear, when considered in the light of the record, that the testimony claimed to be newly discovered would not likely change the result if a new trial should be granted. As a general rule testimony which would have been merely cumulative of that adduced on the trial affords no ground for granting a new trial, when it is claimed that such testimony is newly discovered. Branch's Annotated Penal Code, sec. 203; Turner v. State, 37 Texas Crim. Rep., 451, 36 S. W., 87. If the rule should be relaxed, it is observed that many witnesses who had known appellant for years and who had been intimately associated with him, expressed the opinion that he was insane. Moreover, two physicians, in answering hypothetical questions, declared that in their opinion appellant was insane.

A careful examination of appellant's contentions leads us to the conclusion that reversible error is not presented.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.