H. E. GREEN v. THE STATE.

No. 12509. Delivered June 12, 1929.
Rehearing denied January 29, 1930.

The opinion states the case.

*J. F. Cunningham* of Abilene and *W. V. Dunnam* of Waco, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

LATTIMORE, Judge.—Conviction for murder; punishment, thirty-five years in the penitentiary.

We find in the record two bills of exception, one complaining of the refusal of a continuance, and the other taken to the refusal of a

new trial based in part on the refusal of said continuance and in part on the claimed insufficience of the testimony.

The application for continuance contains nothing from which it could be inferred that same was a first application. In such case the rules and the decisions of this court require that same be considered as a subsequent application. Mitchell v. State, 87 Texas Crim. Rep. 560. Our statute, which is upheld by decisions of this court, requires that all applications after the first must show that the absent testimony cannot be procured from any other source. See Arts. 543–544, C. C. P.; Fulkerson v. State, 57 Texas Crim. Rep. 80; Land v. State, 34 Texas Crim. Rep. 330; Taylor v. State, 88 Texas Crim. Rep. 470. We see no error in the refusal of the application for continuance.

We are unable to agree with appellant's contention in his motion for new trial that there is anything in the record from which we may know that the trial court was compelled to take judicial cognizance of the fact that the application for continuance was the first application. We treat an application for postponement as one for a continuance, in determining whether the particular application under consideration is a first or second application and for all we know there may have been such prior application. Be that as it may, we are of opinion that the application for continuance was wholly lacking in any showing of diligence, there being no process attached, or showing of process for any of the witnesses named therein, and when taken in connection with the motion for new trial and viewed in the light of the facts before the learned trial judge, we are of opinion that no such materiality was shown in the absent testimony as would make his refusal of said new trial, in so far as same was based upon the overruling of the application for continuance, any abuse of his discretion. The State controverted the application for continuance and attached thereto an affidavit of the only witness whose materiality is of importance, and the statements in said affidavit are in direct refutation of much of the testimony given by appellant. This could be demonstrated by setting same out, but we do not deem it necessary.

On the question of the sufficiency of the testimony, we think the record to contain enough facts supporting the proposition of guilt to justify the jury in so concluding. Appellant testified that on Monday preceding this killing on Friday he went to town and there saw a Mexican man in jail; that he arranged with the officers to let said Mexican go to appellant's home and pick cotton for him.

He testified that the next day said Mexican did pick cotton, and that on the day following,—which would be Wednesday,—a Mexican woman named Flossie, whom he had seen in town, came to his house and wanted permission to pick cotton with the Mexican man above referred to. Appellant said he took the matter up with his wife, knowing she was of a jealous disposition, etc., and that she agreed that Flossie might be so employed. Appellant further testified that the following morning (which was Thursday morning), his wife wanted this woman to get up and help her with breakfast, and upon refusal of the woman so to do his wife got mad. He further testified that later in the day his wife came out into the cotton patch and demanded that he or the Mexican woman, one, leave the patch, and that they had a considerable row about it. He further detailed the fact that next morning while getting breakfast his wife renewed the row about the Mexican woman and they quarreled for an hour or two about it. He said he then went away with a bale of cotton and returned, and it being a showery day, the cotton pickers came to the house and were invited by him to come in to the fire and dry themselves. He said here the quarrel with his wife was renewed, and that he finally directed a man to take the Mexican woman to town in a car. He said that his wife stated that if the man took the Mexican woman to town she would kill them both, and he said that as the man and the Mexican woman started around the house in the car he went in the house to prevent his wife carrying out her threats, and that she had a gun, and that he was mad and she was mad, and that he "ran into her" and grabbed her, gun and all and that the gun went off, shooting her. This was substantially his account of the way the killing occurred, intermingled with many statements of affection for his wife, and other details. A negro woman, of whom he said his wife was also jealous, testified that she was working out in the yard washing and heard the shot, and that appellant came out of his house and told her he had accidentally killed his wife in a struggle over the gun. The young daughter of the negro woman mentioned testified for the State, that she was looking in the house through an opened door just before the shooting and saw appellant with a gun in his hands pointed down from which he was extracting shells. She said in a moment he raised the gun and fired it, and that she saw deceased,—whom she had not been able to see before that in the house,—fall forward to the floor. Two empty shells were found near the body of deceased, and one empty shell was in the gun. It was shown by the undertaker and the doctor who examined

the body that the woman was shot once, the bullet entering beneath her left jaw and coming out about the edge of the hair in the rear, producing instant death. Both of said witnesses further testified that the woman had as many as fifteen or eighteen bruises on her body between her hips and knees, one of them saying the spots were black and blue, and that they gave evidence of being recently inflicted. One of these spots in size and shape corresponded with the butt of the gun with which the woman was killed. Appellant admitted in his testimony that during his quarrel with his wife he jerked the gun away from her and shoved her down. He also admitted that on the morning before the killing he struck her as many as three times.

The trial court in his charge fully and fairly instructed the jury regarding the theory of self-defense and of accidental homicide resulting from the discharge of a gun over which appellant claimed he and his wife were struggling. We regard the testimony as sufficiently meeting and overcoming any claim of accidental discharge of the gun.

While not to be considered as sustaining the proposition of the sufficiency of the testimony, we might observe that the affidavit of the absent witness Baker which was attached to the State's controversy of the application for continuance, contained the statement that he heard no quarreling between appellant and his wife on the morning of the homicide; that there was a peaceful dinner and that when he was leaving the premises with the Mexican woman in the car that afternoon, appellant and his wife were standing in the yard together; that they had no gun.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Two bills of exception are found in the record. They pertain to the action of the court in refusing continuance and denying new trial. The indictment was filed November 23, 1928. The trial took place on December 7, 1928. Three witnesses were named in the application for a continuance, namely, George (Blondy) Baker, Charley Allison, and Leo, a Mexican. The date of the application for process is not revealed, but it is stated that the application was made as soon as the case was set for trial. The witnesses were alleged to have resided at or near Colorado in Mitchell

County, Texas. The date of the issuance of the subpœnas is not shown, nor is it shown when or by whom they were delivered to the sheriff. It is stated that the witnesses were not served and that the "defendant is informed that the sheriff has been unable to this date to locate said witnesses and serve said subpœnas and the subpœnas are made a part of the application. However, as the record comes here, neither the application nor the subpœnas appear attached. In the absence of the data to which reference has been made (that is, when the subpœnas were applied for, when they were issued and when delivered to the sheriff) it is impossible for this court to determine whether the appellant was diligent in his effort to secure the attendance of the witnesses. The burden of showing diligence is upon the accused. See Branch's Ann. Tex. P. C., Sec. 314, and numerous cases collated, beginning with Walker v. State, 13 Tex. Cr. App. 647.

From the application for continuance it appears that the testimony expected from the witnesses George (Blondy) Baker and Charley Allison was that about one week prior to the homicide while the appellant, Baker and Allison were picking cotton, the deceased, Lillie Green, wife of the appellant, had a gun in her possession and threatened the life of the appellant by words, acts and deeds; that the appellant succeeded in taking the gun from the deceased, and the witness Baker broke the gun against a fence post; that the gun was loaded at the time the threats were made by the deceased.

The application for continuance was controverted by the state, and the affidavit of Blondy Baker was attached. This affidavit is referred to by appellant in his bill of exception as excusing him for not having attached an affidavit of said witness to his motion for new trial, hence it may properly be considered. In the affidavit Baker states that on the day of the homicide and shortly before it took place, the deceased came to the lot with a gun in her hand, which the appellant snatched away from her and took her back to the house; that there was no fight or struggle; that appellant came back and proceeded with his work. Nothing in the affidavit refers to the alleged incident detailed in the application for continuance. The written confession of appellant was also used in controverting the application for a continuance. It goes into considerable detail relating the incidents prior to and leading up to and at the time of the homicide, but is silent touching any mention of the incident. Nothing in Baker's affidavit intimates that he heard deceased at any time make any threat toward appellant.

By statute, Article 543, C. C. P., the burden is placed upon accused to so frame his application for continuance that diligence to procure the absent testimony will appear from the motion to continue. The burden is not upon the state to show an absence or lack of diligence. There are no presumptions in favor of the sufficiency of the application. On the contrary, the precedents are in favor of the correctness of the ruling of the court in refusing the continuance. Cantu v. State, 1 Tex. Cr. App. 402; Walker v. State, 13 Tex. Cr. App. 647; Branch's Ann. Tex. P. C., Sec. 314; and precedents collated; also Vernon's Ann. Tex. C. C. P., 1925, Vol. 1, page 422, Note 5.

Appellant insists that in the bill of exception complaining of the overruling of his motion for new trial it is shown that the application for continuance was a first application. This appears to be true. The action of the court in denying an application for continuance may be reviewed by the trial court on the motion for new trial, and his action on the motion is subject to review on appeal if any abuse of discretion appears. The inquiry on motion for new trial goes to the merits of the application for continuance as viewed in the light of the evidence adduced on the trial, and in exceptional instances reversals have resulted although diligence shown in the application was questionable. Vernon's Ann. Tex. C. C. P., Vol. 1, page 459. Such cases will usually be found to be those where it is reasonably sure the absent testimony if before the jury, would have produced a different result.

It is not practicable to set out in detail appellant's testimony on the trial. From it alone comes barely the suggestion of self-defense. Time after time he asserts that he was not afraid his wife would kill him nor was he "scuffling with her in his own self-defense." Nothing in Baker's affidavit as to what his testimony would be appears to throw light on that subject. The witness was not present at the time of the killing, but had already taken the Mexican woman to town, hence could state no fact within his own knowledge which would bear on the issue of an accidental killing. Appellant's res gestæ statement to the colored woman, Lucile Pollard, that he had killed his wife accidentally, was before the jury. Even if the application for continuance be considered as a first application it fails to show diligence in the other particulars mentioned, and there can be no doubt as to the action of the court in overruling it being correct.

We then have here but the question as to whether there appears an abuse of the discretion of the trial court in overruling the motion for new trial sought upon the ground chiefly that the absent testi-

mony was material and probably true. Mr. Branch in Section 319 of his Ann. P. C., collates many opinions holding that the appellate court should not revise the action of the trial court in this regard unless it be impressed with the conviction, not merely that the accused might possibly have been prejudiced by the absence of the desired testimony, but that it was reasonably probable that if the absent testimony had been before the jury, a verdict more favorable to the accused might have resulted. Covey v. State, 23 Tex. Cr. App. 391; Peace v. State, 27 Tex. Cr. App. 93; and Land v. State, 34 Tex. Cr. R. 340, are cited, among others. Of course when the motion for new trial was presented, the court below was called on, in the light of the testimony adduced, to decide this matter, in the first instance, and having settled it adversely to appellant, we are now called on only to decide whether this was an abuse of the discretion of the trial judge. Bronson v. State, 59 Tex. Cr. R. 17; Bocknight v. State, 87 Tex. Cr. R. 431; Slaughter v. State, 89 Tex. Cr. R. 204.

Summarizing the proposed testimony of the absent witnesses, it would have shown that a week before the killing deceased came to a field where appellant, Baker and Allison were, she having a gun, and that she threatened appellant's life; that she was of a quarrelsome, threatening disposition, continually threatening appellant's life; that thirty minutes before the killing she got a gun and threatened to take appellant's life. No affidavit of any witness was appended to the motion for new trial. The law makes testimony of threats material when self-defense is set up and it becomes material on the issue of who began the difficulty, etc. The trial court knew when passing on this motion for new trial that two witnesses who were present at the time of the killing, and who had been staying at appellant's place, testified, and neither testified to any threat by deceased, or any threatening action of hers, or any attempt to assault or harm appellant by her. These were Lucile Pollard and Mamie Williamson. The court also knew that the Mexican woman Flossie, who was claimed by appellant to have been the immediate cause of a disturbance between himself and his wife, just before the killing, was present at the trial and was tendered to appellant as a witness, but he did not see fit to use her. She had been staying in appellant's house and picking cotton for a few days prior to the killing. The court also knew that appellant himself in his testimony did not claim that he killed his wife in self-defense, but barely suggested such an issue; nor was there any issue as to who began the difficulty. The

court knew that appellant repeatedly testified that he killed his wife accidentally, averring that she had told him that she would kill Mr. Baker and the Mexican woman whenever they started to town, and that when Baker and the woman started to town he at once went to his house, walked in, and that deceased started from the dining room to the shed room with a gun in her hand, and that he was mad and ran into her and grabbed her, and in the struggle the gun went off.

We are unable to find serious fault, if any, in the action of the trial court in concluding that had the absent testimony been present it would likely have not produced a different result.

Appellant urges the verdict is excessive. His own testimony showed he was a man six feet three, and weighed about one hundred sixty pounds, and deceased was a small woman. The fearful condition of the woman's body, with fifteen to eighteen bruises on it below the waist, some as large as a man's hand, one made by a rod about the size of the thumb, one the size and shape of a gun butt, and all discolored and comparatively recent; appellant's admission that on the day of the killing he struck his wife with a bridle, and later struck her twice with doubled harness lines; that he also shoved her down against a wall,—this added to the testimony of the negro girl so irreconcilably and directly contradictory of that of appellant doubtless affected the penalty. The girl's version of the killing was as follows:

"When he went and got the gun . . . the gun was setting by the side of that little closet door. After he got the gun I saw him and he had it down towards the floor getting the shells out of it . . . just about that time . . . I heard the gun fire. When I looked up I saw Mrs. Green fall. I had not seen her before . . . she fell in that shed room . . . if she had been standing where he was I could have seen her. . . . I was looking straight into the door of that house from where I was. . . . From the time I saw Mr. Green taking the shells out of the gun I never did see him put the gun down."

The jury may have been affected somewhat by appellant's conduct as admitted by him. He said that after he laid his wife on the floor he went out to where the negro woman Pollard was, and that they then started on to town, and that he did not go back in the room or pay any further attention to his wife's body or condition. He said she was dead when he laid her on the floor. We have given careful attention and consideration to the arguments advanced, but

are of opinion the case was correctly disposed of in the original opinion.

The motion for rehearing is overruled.

*Overruled.*