Conrad **LOPEZ**, Jr., Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–96–00336–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 22, 1998.

Roger L. Ezell, Galveston, for Appellant.

Michael J. Guarino, B. Warren Goodson, Jr., Galveston, for Appellee.

Before NUCHIA, MIRABAL and O'CONNOR, JJ.

## OPINION

NUCHIA, Justice.

A jury found appellant guilty of aggravated robbery and assessed punishment at 16–years confinement. We affirm.

### SUFFICIENCY OF NON–ACCOMPLICE TESTIMONY

Two accomplice witnesses, a 15–year–old named Tony and a 16–year–old named Anthony, testified against appellant. In point of error one, appellant asserts that the accomplice witness evidence adduced at trial is not sufficiently corroborated by other evidence tending to connect appellant to the offense.

Tony's version of the robbery is as follows. On the day of the robbery, appellant asked him if he wanted to "go hit a lick," which is slang for robbery. Tony replied that he did. Appellant told him he knew the people at a store they could rob in Galveston because they were his former in-laws and he had worked for them. Appellant also told him there would be at least $3,000 there. Tony got into the back of appellant's white Nissan truck. When they later saw Anthony on the street, appellant asked him if he wanted to "go hit a lick," which he did. Appellant showed Tony a .22 Smith & Wesson revolver, which appellant held wrapped in a shirt.

On the drive to Galveston from Houston, appellant told the boys that Anthony would show the gun, while Tony got the money. Appellant did not instruct them to shoot anyone. Upon arriving in Galveston, they drove by the store they were planning to rob. They then drove to the beach, where appellant gave Tony some money. Tony got out of the truck and walked to the store to see if anyone was inside. He went into the store, bought a soda, got change, and left. When he got back to the beach, Tony told appellant an old lady and a man were in the store.

Appellant asked Tony and Anthony if they wanted to rob the store then or wait; they decided not to wait. They all drove to a location near the store where Tony and Anthony got out of the truck and walked to the store. Appellant told them he would pick them up where he had left them.

Tony and Anthony entered the store, and Anthony purchased a soda and received change in return. Tony bought candy, got change for a dollar, and went outside to use a pay phone. When the pay phone did not accept his quarter, he went back into the store intending to commit the robbery with Anthony. When Tony asked for change for his quarter, he heard a gunshot. He testified Anthony shot the woman, and he saw her fall to the floor. When the man in the store started yelling, Tony and Anthony ran out of the store and back to where they were to meet appellant. Tony got into appellant's truck, and Anthony got into the back of the truck.

When they got into the truck, appellant asked if they had gotten the money. Tony told him they did not get any money and a woman had been shot. Appellant told Tony to tell Anthony to throw the gun in the water when they went over the bridge. When Tony told Anthony this, Anthony said he had already gotten rid of the gun. Appellant gave Tony and Anthony t-shirts to change into, and Anthony threw away the shirt he was wearing during the robbery. Tony put the money appellant gave him at the beach into the truck's ashtray.

Anthony's version of the robbery supported Tony's. He confirmed that appellant approached him about committing the robbery, that appellant showed them the store they would rob, and that appellant gave him the gun. Anthony admitted he hid the gun in some bushes.

 A defendant may not be convicted upon the testimony of an accomplice unless such testimony is corroborated by other evidence tending to connect the defendant to the offense. *Hernandez v. State*, 939 S.W.2d 173, 176 (Tex.Crim.App.1997); *Peoples v. State*, 928 S.W.2d 112, 118 (Tex.App.—Houston [1st Dist.] 1996, pet. ref'd); TEX.CODE CRIM. P. ANN. art. 38.14 (Vernon 1979). To test the sufficiency of the corroborating evidence, we eliminate from consideration the evidence given by the accomplice witness, and then examine the remaining evidence to determine if there is other inculpatory evidence of incriminating character to connect the defendant with the commission of the offense. *Hernandez*, 939 S.W.2d at 176; *Peoples*, 928 S.W.2d at 118. The non-accomplice evidence need not be sufficient in itself to establish the accused's guilt beyond a reasonable doubt. *Hernandez*, 939 S.W.2d at 176. Nor is it necessary for the non-accomplice evidence to directly link the accused to the commission of the offense. *Id.* "The accomplice witness rule is satisfied if there is *some* non-accomplice evidence which *tends* to connect the accused to the commission of the offense alleged in the indictment." *Id.* Accomplice testimony need not be corroborated on every element of the offense. *Warren v. State*, 514 S.W.2d 458, 463 (Tex.Crim.App. 1974); *Griffin v. State*, 936 S.W.2d 353, 357 (Tex.App.—Houston [14th Dist.] 1996, pet. ref'd). Here, there is sufficient non-accomplice evidence to support the verdict.

 "Apparently insignificant incriminating circumstances may sometimes afford satisfactory evidence of corroboration." *Munoz v. State*, 853 S.W.2d 558, 559 (Tex.Crim. App.1993). Enrique Ochoa, the owner of the store, identified appellant as his former son-in-law. He testified to essentially the same sequence of events as Tony and Anthony. He identified a picture of Tony as the boy to whom his wife gave four one-dollar bills and four quarters in change. Jerry Netherton, a Galveston police officer, testified that he found four one dollar bills and four quarters in the ashtray of appellant's truck.

 There was also non-accomplice testimony connecting appellant to the two boys before and immediately after the robbery. "Evidence that appellant was in the company of the accomplice at or near the time or place of a crime is proper corroborating evidence to support a conviction." *Hernandez*, 939 S.W.2d at 178 (citing to *Jackson v. State*, 745 S.W.2d 4, 13 (Tex.Crim.App.1988) (presence in company of accomplice near time of offense not alone conclusive, but important factor for corroboration)).

Appellant admitted that he drove the boys to Galveston. He testified he was going there anyway to see his children, and the boys wanted a ride to the beach. Gregory Veal, a cook at a restaurant on the seawall, testified he was driving home when two black

males about 16 or 17 years old ran in front of his car. When he heard Mr. Ochoa yelling that his wife had been hurt, he drove toward the store and saw Mrs. Ochoa bleeding. He then turned back the way he came to look for the boys. He saw one of the boys stop between two trees. He spoke to a man on a bicycle, who told him the boys jumped in the back of a white Nissan truck. He followed what he said was the only white truck on the street. He testified that the two boys he saw running were in the truck, one in the back and the other inside. He could not see the driver. He wrote down the truck's license plate number, then went to the police station and reported what had happened. He later saw both boys at the police station, and one of them was wearing a different shirt. The license plate number was that of appellant's truck.

Thomas Gerami, a City of La Marque patrol sergeant, testified that at about 4:30 p.m. he heard a police radio dispatch about an aggravated robbery, which described a white Nissan truck At about 4:36 p.m., he saw the truck heading back to Houston, and, after turning on his flashing lights and siren, stopped the truck. The driver, whom he identified as appellant, got out of the truck and walked toward Gerami's car. Gerami saw someone he would later identify as Tony in the passenger seat of the truck, and Anthony in the truck bed. Everyone was arrested and transported back to Galveston.

■ Proof connecting appellant to the weapon used to commit the crime is another circumstance to be considered when determining the sufficiency of the evidence to corroborate the accomplice. *Hernandez*, 939 S.W.2d at 178. Charles Janecka identified the gun used in the robbery as his. Janecka's home was burglarized on July 1, 1995, which was the last time he saw the gun. Janecka knew appellant, who had been his neighbor for many years, and appellant's parents still lived next door to him. The last time he recalled seeing appellant in his neighborhood was July 3, 1995. Janecka stated that rocks from a flowerbed belonging to appellant's parents were found inside his home after the break-in.

As in *Hernandez*, although these circumstances individually might not be sufficient to corroborate the accomplices' testimony, taken together, rational jurors could conclude that this evidence sufficiently tended to connect appellant to the offense.

We overrule point of error one.

## APPELLANT'S *BATSON* CHALLENGE

In point of error two, appellant asserts the State improperly used peremptory challenges to prevent two veniremembers from serving on the jury. After the jury had been seated, but not yet sworn, appellant complained that the State used peremptory strikes on the only four black members of the venire (numbers 5, 16, 17, and 18) who might have been reached for jury service. Appellant is hispanic.

■ The State does not dispute that appellant established a prima facie case under *Batson v. Kentucky*, 476 U.S. 79, 96, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69 (1986). Once appellant did so, the burden shifted to the State to provide race-neutral reasons for striking the veniremembers in question. *Poindexter v. State*, 942 S.W.2d 577, 581 (Tex. Crim.App.1996). Appellant complains the State did not meet its burden as to veniremembers 5 and 18.

■ The State responded that it struck everyone 25–years old or younger, and veniremember 5 was 23–years old. Appellant does not argue on appeal that there were other veniremembers 25–years old or younger who were not struck.

■ As to veniremember 18, the State asserted that it struck him because he indicated that deals should not be cut and he would question the credibility of someone who would lie. The State had asked the panel generally whether they would have a problem believing witnesses who were codefendants and who had made a deal. Veniremember 18 apparently raised his hand and expressed concern about codefendant testimony. Number 18, along with other veniremembers, volunteered that although it would depend on the circumstances, they would question the credibility of the witnesses and

would want to hear more evidence. The State struck all of these veniremembers.

When reviewing a *Batson* claim, we examine the evidence in the light most favorable to the trial court's ruling to determine whether the trial court's findings were clearly erroneous. We will not disturb the trial court's ruling absent evidence rebutting the State's race-neutral explanation. *Pondexter*, 942 S.W.2d at 581.

The State offered race-neutral reasons for striking the two veniremembers. Appellant then had the burden to show that the State's race-neutral reasons were actually a pretext for discrimination. *Pondexter*, 942 S.W.2d at 581. Appellant did not present any evidence to rebut the State's nonracially motivated reasons for using its peremptory strikes. Therefore, we cannot say the court's decision was clearly erroneous when viewed in the light most favorable to the decision.

We overrule point of error two.

### THE "WITNESS RULE"

In point of error three, appellant contends the court incorrectly struck the testimony of two defense witnesses, Mireya Garcia Carrillo and Maricella De La Cruz, based upon an alleged violation of the "witness rule." Rule 613 of the Texas Rules of Criminal Evidence (commonly known as "the rule") governs the exclusion of witnesses: "At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order on its own motion." TEX.R.CRIM. EVID. 613. Once invoked, witnesses should not be allowed to hear any testimony in the case or talk to any other person about the case without the court's permission. TEX.CODE CRIM. P. ANN. arts. 36.05, 36.06 (Vernon 1981).

The disqualification of a defense witness must be considered in the context of the accused's constitutional right to call witnesses on his behalf. *Davis v. State*, 872 S.W.2d 743, 745 (Tex.Crim.App.1994); *Webb v. State*, 766 S.W.2d 236, 240 (Tex.Crim.App. 1989); *Chavez v. State*, 794 S.W.2d 910, 914 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd). An accused has the right to call and have his witness testify, and, generally, a defense witness should not be excluded solely for violation of the rule. *Tell v. State*, 908 S.W.2d 535, 541 (Tex.App.—Fort Worth 1995, no pet.).

Appellant argues that the rule was not violated because Garcia and De La Cruz had not been sworn, instructed, or admonished under the rule. Appellant offers no authoritative support for his contention that a witness must first be sworn or instructed before the rule applies. The "witnesses" contemplated by rule 613 are those whom a party anticipates calling to testify. *Tell*, 908 S.W.2d at 540. The admissibility of the testimony of witnesses who have not been placed under the rule is left to the discretion of the trial court. *Shield v. State*, 118 Tex.Crim. 509, 38 S.W.2d 76, 80 (1931); *Jasso v. State*, 699 S.W.2d 658, 661 (Tex. App.—San Antonio 1985, no pet.). We will assume such discretion was properly exercised unless abuse is evident. *Shield*, 38 S.W.2d at 80; *Jasso*, 699 S.W.2d at 661. A trial court abuses its discretion if its ruling is outside the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1990); *Foster v. State*, 909 S.W.2d 86, 88 (Tex.App.—Houston [14th Dist.] 1995, pet. ref'd).

In *Webb*, the court articulated the test for determining if a court properly exercised its discretion in excluding testimony: (1) whether the "particular and extraordinary circumstances" show the defendant or his counsel consented, procured, connived, or had knowledge of a witness or potential witness who is in violation of the sequestration rule, and (2) if no particular circumstances exist to justify disqualification, was the testimony of the witness crucial to the defense. *Webb*, 766 S.W.2d at 245. Appellant has the burden of establishing both prongs. *Webb*, 766 S.W.2d at 246; *Chavez*, 794 S.W.2d at 915.

Defense counsel acknowledged that he discussed each woman's testimony in the presence of the other woman, and that each could hear what the other said. Counsel asserted he had only 15 minutes before trial recommenced in which to meet with them and only

one translator. He proffered the following testimony: De La Cruz, who lived across the street from Janecka, would have testified that on the evening of the burglary of Janecka's home, she heard her front door keys jingling, she went to her front window to look outside, and saw a vehicle slowly drive down the street. Garcia would have testified that approximately 15 to 30 minutes later, she was awakened by a bird she kept in front of her house. When she looked outside, she saw a young, black male leave her yard and walk towards a vehicle that was slowly traveling down the street. She saw three other young black males in the vehicle. She also would have stated that she saw, in the reflection of her front window, the vehicle stop in front of Janecka's house, and several of the youths get out of the vehicle and walk toward his house. About 10 minutes later, she heard vehicle doors close, she looked out the window, and she saw the vehicle drive away from the front of Janecka's house. Neither woman could identify the youths.

■ The rule serves two purposes: (1) it prevents witnesses from tailoring, consciously or unconsciously, their testimony to fit that of other witnesses, and (2) in the case of witnesses testifying for the same side, it enhances the jury's ability to detect falsehood by exposing inconsistencies in their testimony. *Tell,* 908 S.W.2d at 540. Here, the purpose of the rule was implicated. Although the testimony of the two women would not have contradicted anyone else's testimony, their stories complimented one another's in that the events they witnessed took place within a very short window of time, and occurred in the same close geographic area. There was clearly the potential that one of the witnesses might alter her perception of what occurred after hearing what the other witness had to say. Defense counsel, who himself invoked the rule, met with the women and discussed the testimony of each in the presence of the other. "Particular circumstances" other than the mere violation of the rule exist; therefore, the court did not abuse its discretion in striking Garcia and De La Cruz's testimony.

We overrule the third point of error.

We affirm the judgment.

O'CONNOR, J., concurs in the judgment only.