SALINAS V. STATE

NO. 07-99-0513-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JUNE 12, 2001

______________________________

GILBERT SALINAS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_________________________________

FROM THE 100
TH
 DISTRICT COURT OF CHILDRESS COUNTY;

NO. 4144; HONORABLE DAVID M. MCCOY, JUDGE

_______________________________

Before BOYD, C.J., and QUINN and JOHNSON, JJ.

Appellant Gilbert Salinas appeals from his conviction of aggravated robbery and the resulting punishment of 40 years confinement in the Institutional Division of the Department of Criminal Justice.  In seven issues, appellant alleges the following errors:  (1) the State failed to prove venue in Childress County; (2) the trial court erred in denying appellant’s motion for directed verdict; (3) the trial court erred in denying appellant’s motion for an eyewitness identification expert; (4) the trial court dismissed the action and therefore lost jurisdiction over it; (5) the trial court made impermissible comments; (6) the State violated “the Rule”; and (7) the trial court erred in denying appellant’s special plea of double jeopardy.  For the reasons hereinafter set forth, we affirm the judgment of the trial court.

A brief recitation of the facts is necessary to our disposition of appellant’s issues.  On the afternoon of August 24, 1997, Billy Joe Mullin picked up Pat McBeth at her parents’ home and drove to her apartment in Childress, Texas, to deliver a washing machine.  A couple of blocks from the apartment, Mullin’s pickup truck died and they walked to her apartment.  Sometime later, Mullin walked back to the pickup to try to get it started.  Appellant stopped to ask Mullin if he needed help.  Appellant then pushed Mullin’s vehicle to McBeth’s apartment with his truck.   At that point, appellant contended he left.  However, McBeth, who knew appellant, and Mullin both claimed appellant went and bought a bottle of vodka, which the three then drank in McBeth’s apartment. 

 Appellant then asked Mullin to help him load a piece of equipment.  Appellant and Mullin drove into the country south of Childress while McBeth remained at her apartment.  At some point, appellant pulled to the side of the road and demanded Mullin’s money.  When Mullin denied having any, he was told to get out of the vehicle.  He remembers reaching for the door handle and nothing else until he awoke alone in the country.  At that time, he was bleeding from the head.  Mullin then crawled to an abandoned house and broke a window to get in.  He claims to have drunk some water from a hot water heater.  He also discovered his wallet and checkbook missing.  After resting, he crawled to the next closest house, where the occupant called for an ambulance, which took Mullin to a hospital.  The examining doctor found abrasions, bruises, and cuts which required stitches.

In his first issue, appellant contends the State failed to prove that the crime occurred in Childress County where appellant was prosecuted.  He claims that the only direct evidence of venue is Mullin’s statement that “[w]e went to this farm to market road that goes out towards Buckle L Ranch.”  However, because Sheriff Darin Smith testified he could not pinpoint the exact location of the crime, appellant argues there is no basis for the court to assume that an unknown spot on a farm-to-market road that goes toward Buckle L Ranch is in Childress County.

  In criminal cases, venue must be proven by a preponderance of the evidence. Tex. Code Crim. Proc. Ann. art. 13.17 (Vernon 1977); 
Banks v. State
, 530 S.W.2d 940, 943 (Tex.Crim.App. 1975). That evidence may be either direct or circumstantial.  
Black v. State, 
645 S.W.2d 789, 790 (Tex.Crim.App. 1983).  The evidence as to venue is sufficient if the jury may reasonably conclude that the offense was committed in the county alleged.  
Rippee v. State
, 384 S.W.2d 717, 718 (Tex.Crim.App. 1964); 
Couchman v. State
, 3 S.W.3d 155, 161 (Tex.App.--Fort Worth 1999, pet. ref’d).  

Although Smith did not identify the exact location of the crime scene, he averred that he located an area he believed to be in close proximity to the crime scene.  He stated that, from the location he identified, the closest point outside of Childress County was 12 or 15 miles and the crime scene was well within the county.  He located the vacant house where Mullin claimed to have rested and found a broken window and blood both outside and inside the house.  He also went to the residence of the person who took Mullin to meet the ambulance, which Mullin stated was about 3/4 of a mile from the vacant house.  Smith further testified that Buckle L Road dead-ends into a gate before it leaves Childress County.  We believe that from this evidence the jury could reasonably conclude the crime was committed in Childress County.  Appellant’s first issue is overruled.

In his second issue, appellant claims error on the part of the trial court in denying his motion for directed verdict because there was insufficient evidence that a wallet and a checkbook were stolen and that appellant committed a crime.  Appellant has, in effect, challenged the legal sufficiency of the evidence to support his conviction.  In evaluating legal insufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d. 560 (1979). 

Mullin testified that he and the man who helped him with his car drove to a farm-to- market road that goes towards Buckle L Ranch.  McBeth knew the man who drank with her and Mullin at her residence and who left with Mullin.  She both identified him by name to law enforcement personnel and identified appellant in court as that man.
(footnote: 1)  Appellant admitted at trial that he knew McBeth and assisted Mullin with his truck.  Mullin stated he had three dollars in his front pocket, his billfold and his checkbook when he left McBeth’s apartment.  When the man Mullin was with stopped the vehicle, he asked Mullin for his money.  When Mullin said he did not have any, the man told him to get out of the vehicle.  Mullin remembers nothing after he reached for the car door handle until he awoke in a pasture.  After he crawled to a vacant house, he noticed that his wallet and his checkbook were missing.  Neither article was ever located.   

There was also testimony from Smith on rebuttal that another witness, Jeff Drew, told Smith he had seen appellant leave McBeth’s house with an old man and later return without him, even though Drew denied at trial having made that statement.  Additionally, Smith testified on rebuttal that he took a written statement from another inmate, Thomas Gonzalez, in which Gonzalez stated that appellant admitted to him that he had beaten and robbed “that old man,” although Gonzalez denied at trial having made any such statement or that the signature on the statement was his.    

While there was evidence that both McBeth and Mullin had been drinking prior to the alleged crime and there were some inconsistencies at trial between McBeth’s testimony and that of Smith, such as the fact that McBeth claimed Smith took photographs of some blood on her porch, which she said was Mullin’s as a result of a fall, while Smith denied taking any such photographs, the credibility of the witnesses was well within the province of the jury to determine.  Looking at the evidence in its most favorable light to the verdict and assuming, as we must, that the jury chose to believe the testimony of McBeth and Mullin as to the elements of the offense, the evidence is sufficient to support the verdict.  Appellant’s second issue is overruled.  

In his third issue, appellant argues his right to due process was denied by the trial court’s refusal to grant his request for a state-funded eyewitness identification expert.  Appellant relies on 
Rey v. State
, 897 S.W.2d 333 (Tex.Crim.App. 1995), as authority for the right of an indigent for appointment of an expert whenever he establishes a substantial need.   Appellant averred he needed an identification expert at trial because Mullin told law enforcement officials he was assaulted by a white male when appellant is Hispanic.  Further, Mullin was shown a photograph by Sheriff Smith of only one suspect, appellant, and Mullin identified the person in the photograph as his assailant.  After this identification, Mullin was called to testify at appellant’s parole revocation hearing and, upon being asked if he recognized anyone in the room, Mullin did not name appellant, who was present.  Appellant argued in his motion seeking an expert that if the court denied his motion to suppress the identification of appellant by Mullin, he needed an expert to testify as to the unreliability of eyewitness testimony and problems with cross-racial identification.  

To be entitled to appointment of an expert witness, a defendant must make a preliminary showing that the issue on which the expert will testify is likely to be a significant factor at trial.  
Id
. at 339.  The Court of Criminal Appeals has previously found it essential that indigent defendants be provided with access to a chemist in a controlled substance case, a psychiatrist in a murder case in which insanity was the only contested issue, and a pathologist in a capital murder case in which the cause of death was a significant issue.  
Jackson v. State
, 992 S.W.2d 469, 474 (Tex.Crim.App. 1999).  The court noted that in each instance, the defendant had made a preliminary showing of a significant issue of fact on which the State would present expert testimony and which the knowledge of a lay jury would not be expected to encompass.  
Id.  

At the time appellant argued his motion for appointment of an identification expert to the court, the court had already ruled that Mullin would not be allowed to testify as to the photograph identification.  The State represented to the court at the hearing on the motion for appointment of an expert that it did not believe there was an independent basis apart from the photograph for Mullin to identify appellant, and that the only identification testimony the State intended to elicit from Mullin at trial was that the man he left with from McBeth’s apartment assaulted him. The State further represented it did not plan to ask Mullin for an in-court identification of appellant at trial.  

Although appellant argued he still needed an expert to assist in the cross-examination of Mullin and McBeth, we find no error in the trial court’s refusal to appoint an expert.  McBeth’s in-court identification of appellant was known to both parties before trial to be based on her prior acquaintance with him, which raises the issue of McBeth’s credibility, but not of misidentification.   Mullin was also still capable of having the credibility of his own limited trial testimony impeached by the fact he had identified his assailant to Sheriff Smith as a white male.  A jury is qualified to make determinations on credibility of eyewitnesses aided by cross-examination and common knowledge of memory without expert assistance.  
See Pierce v. State
, 777 S.W.2d 399, 415 (Tex.Crim.App. 1989), 
cert. denied
, 496 U.S. 912, 110 S.Ct. 2603, 110 L.Ed.2d 283 (1990).  The State was not offering any expert testimony of its own on this matter, and there was no significant issue of fact which the knowledge of the jury could not be expected to encompass. 
 Appellant’s third issue is overruled. 

In his fourth issue, appellant contends the trial court previously dismissed the cause of action and thereby lost jurisdiction.  Appellant filed a petition for writ of habeas corpus and a motion to dismiss in the trial court in which he asserted that dismissal was required by article 2.01 of the Code of Criminal Procedure, which imposes a duty on prosecutors to see that justice is done, because Mullin could not identify him at the parole revocation hearing.  On March 12, 1998, the trial court signed an order included with the motion to dismiss, which read as follows:

On this the 12
th
 day of March A.D.1998, came on to be heard Defendant’s Motion, and the evidence and argument of counsel having been heard by the court, and it appearing to the court that said motion should in all things be [sic]; and It is therefore Ordered, Adjudged and Decreed that Defendant’s Motion is hereby:

GRANTED   \    DENIED

___________________________

Judge Presiding

Neither the words  “granted” or “denied” were circled, nor was there any indication as to the court’s ruling.  Appellant argues that because the order is ambiguous, it must be construed against the State, and therefore, since the case was dismissed, the court had no power to enter a judgment.  

A trial court has no general authority to dismiss a complaint without the State’s consent or constitutional, statutory, or common law authority.  Tex. Code Crim. Proc. Ann. art. 32.02 (Vernon 1989); 
State v. Salinas, 
976 S.W.2d 870, 871 (Tex.App.--Corpus Christi 1998, no pet.); 
Irving v. State
, 879 S.W.2d 220, 221(Tex.App.--Houston [14
th
 Dist.] 1994), 
aff’d,
 922 S.W.2d 959 (Tex.Crim.App. 1996);
 
State v. Donihoo, 
926 S.W.2d 314, 315 (Tex.App.--Dallas 1994, no pet.).
  There is no indication in the record that the court found any constitutional, statutory, or other authority on which to dismiss this cause of action.  Thus, we will not presume that the court intended to dismiss this action by its failure to circle or mark either granted or denied on the proposed order.   Moreover, the continuing actions and rulings of the court contained in the record would strongly indicate the cause of action was not dismissed.  Appellant’s fourth issue is overruled.  

Appellant asserts in his fifth issue that the trial court made impermissible comments prejudicing his right to a fair and impartial trial.  During the course of appellant’s testimony, the district attorney and appellant often spoke over each other.  In the presence of the jury, the following exchange took place:

THE REPORTER: - - I need to make a statement on the record, again, that the record is in danger.

THE COURT:  The record is going to be incomplete, Mr. Salinas.  Mr. Griffin will help you.  That’s what he’s paid to do.  The story is going to say what it says.  Respond to the questions.  Nobody is going to be name calling.  I’m trying my best to make the record complete.  

You’re making this man’s job impossible.  And I don’t know what the jury is going to do, but if they were to convict, that’s the only thing that would help you right there. 

 

I hope you know that.  

 

THE DEFENDANT:  Yes, sir, I do.

THE COURT:  Mr. Griffin knows that.  That is going to tell the tale.  And I want the complete story on the record. 

 

Let’s take ten minutes.  

Appellant posits that the remark, “if they [the jury] were to convict . . . ,” constituted a comment on the weight of the evidence in violation of article 38.05 of the Code of Criminal Procedure, and reversal of his conviction is required.

During the break, appellant moved for a mistrial.  The court denied the motion and offered to instruct the jury if appellant so desired.  After conferring with appellant, counsel stated:  “We would ask an instruction, Your Honor, along the lines you used.  I think that would be adequate.”  After the jury returned to the courtroom, the trial court admonished the jury as follows:

THE COURT:  Just before the break, in an effort - - and I think I told y’all back in voir dire whenever there was like 100 or 80 people here and when we talked about y’all taking notes – it’s important that Mr. Langford be able to have a full and complete set of notes because his record is what the case is about.

In other words, if you’re not here all you know that happened is what he writes.  If he misses it, it doesn’t happen.

So I was making an extreme effort to protect the record.  And you’ll here [sic] Mr. Langford even from time to time mention, “Judge my record is in trouble,” if we have more than one person talking at a time.

At that time I indicated to Mr. Salinas – because it’s an emotional time for all parties here – I indicated to Mr. Salinas that this record needs protected for your benefit, of course also for the State of Texas’ benefit.  It’s important that you understand, I reiterate what I said before, anything I said or may have not said the way I should have said, was not indicated or not said or meant to indicate to you the way I feel about this trial at all.

I think one statement I made was if the jury were to find you guilty – certainly that’s not an indication I thought the jury should or should not.

Told you to start with, you are the sole total and exclusive judges of the facts of this case.  What I think doesn’t matter.

I really don’t have an opinion about this case.  I’m like the official at a football game.  I don’t care who wins.  I just try to see that it’s played by the rules.

And so if you took that in any means at all – whatever basis of respect I may have in this community I hope you will take it to understand that I mean this is called the way you see it.  Not the way I see it.

Mr. Griffin, do you think of any additional instructions, admonishments, 

in that regard?

MR. GRIFFIN:  No. Your Honor. Thank you.  

In ruling on the admissibility of evidence, the judge is not to comment on the weight of the evidence or its bearing on the case, nor shall he at any stage of the proceeding prior to the return of the verdict make any remark calculated to convey to the jury his opinion of the case.  Tex. Code Crim. Proc. Ann. art. 38.05 (Vernon 1979).  However, to constitute reversible error, the court’s comments must be such that they are reasonably calculated to prejudice the defendant’s rights.  
Sharpe v. State
, 648 S.W.2d 705, 706 (Tex.Crim.App. 1983); 
Rodela v. State
, 829 S.W.2d 845, 851 (Tex.App.--Houston [1
st
 Dist.] 1992, pet. ref’d).  Generally, an improper comment by the trial court can be cured by an instruction to disregard the comment.  
Moore v. State
, 907 S.W.2d 918, 923 (Tex.App --Houston [1
st
 Dist.] 1995, pet. ref’d); 
Silva v. 
State, 831 S.W.2d 819, 823 (Tex.App.--Corpus Christi 1992, no pet.); 
Strong v. State
, 805 S.W.2d 478, 490 (Tex.App.--Tyler 1990, pet. ref’d).

Initially, we note that the objectionable remark in this instance was prefaced with the statement that the trial court did not know what the jury would do with respect to conviction.  Furthermore, the objectionable remark itself only posed a hypothetical situation which the jury surely understood was one of two possible outcomes from the jury’s verdict, 
i.e.
, appellant would be convicted or acquitted.  Moreover, at appellant’s request, the trial court gave a lengthy instruction to the jury that they were not to consider his remark as any opinion that he might have on the case, and no objection was made to this instruction by appellant.  The questionable remark was not designed to injure appellant, but to create a record of the trial which would be necessary to preserve appellant’s rights in the event of conviction.  Any error that may have occurred was cured by the court’s instruction.  Appellant’s fifth issue is overruled.    

Appellant asserts in his sixth issue that the State “invited error” by its violation of “the Rule” as articulated in article 36.06 of the Code of Criminal Procedure.  That particular article provides:

Witnesses, when placed under rule, shall be instructed by the court that they are not to converse with each other or with any other person about the case, except by permission of the court, and that they are not to read any report of or comment upon the testimony in the case while under rule.  The officer who attends the witnesses shall report to the court at once any violation of its instructions, and the party violating the same shall be punished for contempt of court.

Tex. Code. Crim. Proc. Ann. art. 36.06 (Vernon 1981).  Texas Rule of Evidence 614 also provides that at the request of a party, the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses.  The rule serves the purpose of preventing witnesses from tailoring their testimony to fit that of another witness, and in the case of witnesses testifying for the same side, it enables the jury to detect falsehood by the exposure of inconsistencies in the testimony.  
Lopez v. State,
 960 S.W.2d 948, 954 (Tex.App.--Houston [1
st
 Dist.] 1998. pet. ref’d); 
Tell v. State
, 908 S.W.2d 535, 540 (Tex.App.--Fort Worth 1995, no pet.).    

The claimed error occurred during the testimony of Sheriff Smith concerning a witness, Thomas Gonzalez, from whom Smith had allegedly taken a statement indicating that appellant committed the offense.  Gonzalez, who had been originally subpoenaed by the State to testify against appellant, but who was actually called as a witness by appellant, denied he had given that statement to Smith or signed it.  Gonzalez also testified that Smith had initiated the conversation which resulted in the statement allegedly being prepared by Smith.  Gonzalez further claimed that, when he met with the prosecutor on the day he testified on appellant’s behalf, he had taken one of the prosecutor’s statements to him as a threat that something would happen to his family, and he told the prosecutor that if something did happen to someone in his family, he would hurt the person who did it.

At some point during that meeting between the prosecutor and Gonzalez, the prosecutor asked Smith to step into the room.  Smith testified that the prosecutor asked Gonzalez to look him in the eye and tell the prosecutor who had first initiated the conversation, which resulted in the statement being taken.  Smith also averred that Gonzalez said Smith just “wrote stuff down,” and that Gonzalez did not know what was in the statement.  At that point, Smith told Gonzalez he was a liar, after which the meeting essentially ended.  Smith also testified that the prosecutor did not threaten Gonzalez in his presence and that the prosecutor told Gonzalez that if any member of Gonzalez’s family was a victim, law enforcement would do all it could to help them.  Gonzalez stated in response that if any member of his family was a victim, he would kill the person responsible.

Appellant objected at the point where the State first elicited from Smith that he was asked to come into the room where the prosecutor was meeting with Gonzalez.  The basis of the objection to the testimony that followed was that there was a denial of due process and the testimony as to what occurred at that meeting was in violation of the rule.  Appellant also moved for a mistrial.  

For violations of the rule, the trial court may hold the witness who violates the rule in contempt or refuse to allow the witness to testify.  
Bell v. State, 
938 S.W.2d 35, 50 (Tex.Crim.App. 1996), 
cert
. 
denied, 
522 U.S. 827, 118 S.Ct. 90, 139 L.Ed.2d 46 (1997).  
In determining whether to disqualify a witness, the trial court must balance the interest of the State and the defendant, must consider alternative sanctions, and it must consider the benefit and detriment arising from the disqualification in light of the nature and weight of the testimony to be offered.  
Flores v. State, 
915 S.W.2d 651, 653 (Tex.App.--Houston [14
th
 Dist.] 1996, pet. ref’d); 
Tell,
 908 S.W.2d at 541.  The trial court’s action is reviewed under an abuse of discretion standard.  
Id
. at 541; 
Brown v. State
, 632 S.W.2d 191, 194 (Tex.App.-- Waco 1982, no pet.).

In this instance, the State did not offer the questionable testimony as part of its case.  The testimony of Smith, which appellant sought to exclude, was only offered on cross-examination by the State after Gonzalez testified as a witness for appellant and after appellant recalled Smith as a witness.  Moreover, both witnesses admit that a conversation took place between them during which some sort of statement was prepared, and the testimony as to who first initiated that conversation and whether the prosecutor threatened Gonzalez prior to his testimony for appellant are not directly related to appellant’s guilt or innocence.  We cannot say that the trial court abused its discretion in refusing to exclude the proffered testimony, and we overrule appellant’s sixth issue. 

In his seventh issue, appellant alleges error in the trial court’s denial of his special plea of double jeopardy.  Appellant argues that because he was previously brought to trial before an examiner of the Hearing Section of the Texas Board of Pardons and Paroles in a parole revocation hearing and the allegations for which he was on trial in the case at bar were not sustained in that proceeding, the prosecution is barred by double jeopardy.  

This issue was previously raised by appellant when he filed his special pleas of double jeopardy and writ of habeas corpus, which were ultimately presented to us by way of an interlocutory appeal.  We held that a hearing examiner’s finding of insufficient evidence made after presentation of the indictment and docketing of the criminal prosecution in district court, was not such a finding of ultimate fact as to collaterally estop the State from prosecution.  
See Salinas v. State, 
1 S.W.3d 700, 703 (Tex.App.-- Amarillo 1999, no pet.).  Appellant is now essentially asking us to reconsider that opinion.

For reasons explicated in our prior opinion, we based our decision on the court’s holding in 
State v. Brabson, 
976 S.W.2d 182 (Tex.Crim.App. 1998), which holding appellant argues is ill-founded.  As we previously stated, an intermediate appellate court may not disregard a decision of the Court of Criminal Appeals.  
Salinas,
 1 S.W.3d at 703.  We decline to revisit the matter and overrule appellant’s sixth issue.  

In summary, we overrule all of appellant’s issues and affirm the judgment of the trial court.  

John T. Boyd

 Chief Justice

Do not publish.

FOOTNOTES
1:
Mullin had identified his assailant to law enforcement personnel as a white male and was not asked to identify appellant in court.  There was also testimony that, at a parole revocation hearing, Mullin did not recognize appellant as his assailant.