In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00111-CR
______________________________


WENDELL MCCOY, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 71st Judicial District Court
Harrison County, Texas
Trial Court No. 04-0305X


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION
            Wendell McCoy and his best friend, Patrick Lister, were together and drinking heavily. After
an encounter with police at a local bar, McCoy was angry and talked of driving by and "shooting up"
the police station. Lister's efforts to talk McCoy out of the retaliation resulted in McCoy's shooting
Lister once in the lower abdomen and maybe another time in the buttocks. For the shooting, a
Harrison County jury convicted McCoy of aggravated assault and assessed punishment at fifteen
years' imprisonment. The trial court sentenced McCoy accordingly. In a sole point of error, McCoy
asserts the sentence is disproportionate. We affirm the judgment.
            Texas courts have traditionally held that, as long as the punishment assessed is within the
range prescribed by the Legislature in a valid statute, the punishment is not excessive, cruel, or
unusual. See, e.g., Jordan v. State, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973). But a prohibition
against grossly disproportionate punishment survives under the Eighth Amendment to the United
States Constitution apart from any consideration of whether the punishment assessed is within the
range established by the Legislature. See Jackson v. State, 989 S.W.2d 842, 846 (Tex.
App.—Texarkana 1999, no pet.); see also Fluellen v. State, 71 S.W.3d 870, 873 (Tex.
App.—Texarkana 2002, pet. ref'd).
            Our proportionality analysis under both the Eighth Amendment to the United States
Constitution and Article I, Section 13 of the Texas Constitution is guided by (1) the gravity of the
offense and the harshness of the penalty, (2) the sentences imposed on other criminals in the same
jurisdiction, and (3) the sentences imposed for commission of the same crime in other jurisdictions. 
See Solem v. Helm, 463 U.S. 277, 292 (1983); Simmons v. State, 944 S.W.2d 11, 15 (Tex.
App.—Tyler 1996, pet. ref'd) (evaluating appellant's Texas constitutional claim of cruel and unusual
punishment under test outlined in Solem). Only if we find that the sentence is grossly
disproportionate to the offense will we then consider the remaining factors of the Solem test and
compare the sentence received to sentences for similar crimes in the same jurisdiction and to
sentences for the same crime in other jurisdictions. McGruder v. Puckett, 954 F.2d 313, 316 (5th
Cir. 1992); see also Davis v. State, 905 S.W.2d 655, 664–65 (Tex. App.—Texarkana 1995, pet.
ref'd).
            As a prerequisite to presenting a complaint for appellate review, the record must show that
the complaint was made to the trial court and that the trial court either ruled or refused to rule on that
complaint. Tex. R. App. P. 33.1(a). The complaint must be sufficiently specific to make the trial
court aware of the grounds of the complaint. Tucker v. State, 990 S.W.2d 261, 262 (Tex. Crim. App.
1999).
            At no time did McCoy object to the trial court concerning the sentence imposed on him. 
There was no motion for new trial. He has not preserved for our review the alleged
disproportionality of his sentence.
            Even if McCoy had preserved this issue for our review, and assuming we were to find that
McCoy's sentence was grossly disproportionate to his crime, the record does not contain any
evidence comparing this sentence with others in the same jurisdiction for this offense, or those
imposed on defendants in other jurisdictions who committed similar offenses. Delacruz v. State, 167
S.W.3d 904, 906 (Tex. App.—Texarkana 2005, no pet.); Alberto v. State, 100 S.W.3d 528, 530 (Tex.
App.—Texarkana 2003, no pet.). Therefore, even if preserved, no error has been shown.
            We affirm the judgment of the trial court.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          November 28, 2005
Date Decided:             December 7, 2005

Do Not Publish



s. Taylor
maintained that no such private conversation took place between T.G. and Henry, and
wanted the opportunity to rebut her testimony by offering the testimony of Henry, who had
been sitting in the courtroom throughout the trial. The trial court excluded the rebuttal
testimony because the Rule was invoked at the beginning of trial and the State objected
to the testimony.
          Disqualification of a defense witness for such witness' violation of the Rule must be
viewed in light of the defendant's constitutional right to call witnesses on his or her behalf.
Davis v. State, 872 S.W.2d 743, 745 (Tex. Crim. App. 1994). Generally, a defense witness
should not be excluded solely for violation of the Rule. Lopez v. State, 960 S.W.2d 948,
953 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd). The trial court's decision to exclude
a witness' testimony is reviewed under the abuse of discretion standard. See id. A trial
court abuses its discretion if its ruling is outside the zone of reasonable disagreement. Id. 
The test for determining if a court properly exercised its discretion in excluding testimony
in this context is: 1) whether the "particular and extraordinary circumstances" show the
defendant or his or her counsel consented, procured, connived, or had knowledge of a
witness or potential witness who is in violation of the sequestration rule, and 2) if no
particular circumstances exist to justify disqualification, was the testimony of the witness
crucial to the defense. Id. (citing Webb v. State, 766 S.W.2d 236, 245 (Tex. Crim. App.
1989)). The appellant has the burden of establishing both prongs. Id. 
          Taylor contends Henry's testimony was crucial because the trial centered around 
T.G.'s credibility and Henry could have directly controverted one of her claims. However,
excluded testimony is not considered crucial if it can be supplied by witnesses other than
the excluded witness. See Cooper v. State, 578 S.W.2d 401, 403 (Tex. Crim. App. [Panel
Op.] 1979), overruled in part on other grounds, Bates v. State, 587 S.W.2d 121, 143 (Tex.
Crim. App. 1979); Flores v. State, 915 S.W.2d 651, 653 (Tex. App.—Houston [14th Dist.]
1996, pet. ref'd). 
          The confrontation between T.G. and her mother and Taylor and his family was
confirmed by Gladie Roy, Taylor's mother. Gladie's testimony was apparently anticipated
by Taylor, and she was placed under the Rule. Gladie testified that she, Henry, and Taylor
were all present during the confrontation by T.G. and her mother. Gladie further testified
she asked T.G. whether the allegations she was making against Taylor were true, and T.G.
replied, "I’m not sure." It was therefore clear to Taylor that the conversations between the
various participants in this confrontation were important. He could have reasonably
expected to call Henry to testify regarding some aspect of that confrontation, particularly,
who was conversing with whom, which would necessarily include a private conversation
between Henry and T.G., or the lack of a private conversation between them. Taylor,
having knowledge of Henry's presence in the courtroom and the context of his potential
testimony, fails to meet the first prong of the Webb test.
          Taylor also fails to meet the second prong because the excluded testimony was not
crucial to his defense. There were obviously other participants in the confrontation who
could have addressed the issue of whether T.G. and Henry spoke together in private. 
While the other witnesses could not have testified concerning what was said during a
private conversation between T.G. and Henry, if any such conversation occurred, they
could have testified as to whether a private conversation took place at all, which is what
Henry denied in Taylor's proffer of his testimony. The ultimate issue Taylor sought to prove
with Henry's testimony, that no private conversation occurred between T.G. and Henry,
could easily have been proven by Gladie's testimony. Her testimony centered around the
confrontation where the private conversation was alleged to have occurred. Taylor,
however, chose not to ask Gladie about this matter when he called her to testify. Because
other witnesses could have testified to the facts Taylor offered through the proffered
testimony of Henry, that proffered testimony was not crucial. Taylor's first point of error is
overruled.
          In his second point of error, Taylor complains that
The trial court erred in giving an "Allen" charge to the jury after the jurors sent
out multiple notes indicating that one of the members of the jury knew the
child complainant personally, that the jury was divided 11 guilty to 1 not
guilty, that the person voting "not guilty" has a personal attachment with the
neighborhood and one of the witnesses, and that the juror would not [sic]
longer deliberate with the majority of the jury.

          An Allen charge is usually given in response to a specific request by the jury for
additional guidance when the jury is deadlocked. See West v. State, 121 S.W.3d 95, 107
(Tex. App.—Fort Worth 2003, pet. ref'd). To prevail on a complaint that an Allen charge
is coercive, an accused must show that jury coercion or misconduct likely occurred or
occurred in fact. Id. An Allen charge is unduly coercive and therefore improper if it
pressures jurors into reaching a particular verdict or improperly conveys the court's opinion
of the case. See Arrevalo v. State, 489 S.W.2d 569, 571 (Tex. Crim. App. 1973).
          The following time line is helpful in understanding the progression of jury notes in
this case:
          November 18, 2004
11:44 a.m.jury deliberations began
12:30 p.m.jury excused for lunch
1:30 p.m.jury deliberations resumed
 
3:38 p.m.first note asking for guidance because the jury was split eight-
to-four for guilty; jury instructed to continue its deliberations
 
4:20 p.m.second note stating that the jury was broken 10-2 for guilty and
that "one of the jurors knows Christy McDonald and at least
one of the other children that was in front of the courtroom
yesterday";


 jury instructed to follow the written instructions and
continue its deliberations
   
5:30 p.m.third note stating the jury was split 11-1 for guilty; no response
given and jury excused for the day

          November 19, 2004
 
          9:05 a.m.      jury deliberations resumed
 
10:12 a.m.fourth note stating the jury was split 11-1 for guilty and that the
one voting not guilty "has a personal attachment with the
neighborhood and one of the witnesses" and that "the juror will
no longer deliberate with the majority of the jury"
 
10:29 a.m.Allen charge given, over Taylor's objections
 
11:55 a.m.jury given short break at its request
 
          12:15 p.m.    jury deliberations resumed
 
          12:37 p.m.    jury returned unanimous verdict of guilty

          As noted, the jury had deliberated approximately two hours and forty-five minutes
before reporting it was split eight to four. Approximately one hour after being instructed to
continue deliberating, the jury reported it was split ten to two. The court instructed the jury
to continue deliberating. Approximately one hour later, the jury reported being split eleven
to one. The trial court, noting the jury was "deliberating and discussing and minds [were]
being changed," sent the jury home for the day without further instructions concerning its
deliberations. The next day, the jury deliberated for little more than one hour and reported
that it was still split eleven to one and that the one "will no longer deliberate." Only then
did the trial court give the following instruction: 
If the jury finds itself unable to arrive at a unanimous verdict, it will be
necessary for the court to declare a mistrial and discharge the jury. The
indictment will still be pending, and it is reasonable to assume that the case
will be tried again before another jury at some future time. And such future
jury will be empaneled in the same way this jury has been empaneled and
will likely hear the same evidence which has been presented to the jury. The
questions to be determined by that jury will be the same questions
confronting you, and there is no reason to hope the next jury will find these
questions any easier to decide than you have found them. 
 
With this additional instruction, you are requested to continue
deliberations in an effort to arrive at a verdict that is acceptable to all
members of the jury, if you can do so without doing violence to your
conscience. Don't do violence to your conscience, but continue deliberating.

          Approximately two hours after receiving this charge, the jury returned into court with
its unanimous verdict. On Taylor's request, the jury was polled and each of the twelve
jurors affirmed that the guilty verdict was his or her individual verdict. Under these facts,
we do not believe the charge given was coercive.
          Although not as neutral as the instruction approved by the Texas Court of Criminal
Appeals in Howard v. State, 941 S.W.2d 102, 123–24 (Tex. Crim. App. 1996), the Allen
charge given in this case is similar to other instructions that have been reviewed and held
to be noncoercive. See Arrevalo, 489 S.W.2d at 571–72; West, 121 S.W.3d at 109; Willis
v. State, 761 S.W.2d 434, 437–38 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd). As
in West, the charge given in the instant case does not contain the type of language courts
have held to be coercive. See, e.g., Green v. United States, 309 F.2d 852, 855 (5th Cir.
1962) (holding Allen charge coercive that told jury it is duty of minority to listen to argument
of majority with some distrust of their own judgment because rule is that majority will have
better judgment than mere minority). Although not as neutral as it could have been, the
instruction in the instant case did not tell the jury that one side or the other possesses
superior judgment, and did not tell the jurors to distrust their own judgment. It did tell the
jurors twice not to do violence to their conscience. 
          Because the charge given was not coercive on its face, and because nothing shows
it acted to coerce the jury, we hold that Taylor has not shown that jury coercion or
misconduct likely occurred or occurred in fact. His second point of error is overruled.
          We affirm the judgment.

                                                                           Donald R. Ross
                                                                           Justice 

Date Submitted:      September 6, 2005
Date Decided:         September 8, 2005

Publish